**KANSAS CITY, Missouri, Respondent,**

v.

**LUZIER, INCORPORATED, Appellant.**

No. 24656.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

Herbert C. Hoffman, City Counselor, Maurice E. Benson and George L. DeBitetto, Asst. City Counselors, Kansas City, for appellant.

Alvin D. Shapiro, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for respondent.

HOWARD, Presiding Judge.

This is a suit brought by respondent city for additional license taxes, together with penalties, for the years 1957 to 1961, inclusive. The trial court gave judgment for the city for additional license taxes for the five years in the total amount of $5,836.30, but did not allow any penalty. Appellant has duly appealed to this court and we shall refer to the parties as they appeared below.

The case was submitted to the trial court, sitting without a jury, on a stipulation dictated into the record by the attorneys for the respective parties, together with certain documentary evidence introduced as exhibits. From this it appears that the defendant taxpayer is a manufacturer of cosmetics, with its place of business in Kansas City, Missouri. Its products are sold throughout the United States by door to door sales people referred to as "cosmetic consultants". There are approximately 13,000 of these consultants. By the contract between defendant and the individual consultants, the consultants agree "to solicit orders for such [defendant's] product from retail customers or consumers only, at list prices established by Luzier * * *". This contract provides that the consultants are independent contractors and not employees of Luzier, and that Luzier will allow the consultants "to retain a commission of 33⅓% from retail customer prices on each order" sold by the consultant. On C.O.D. orders the consultant is required to collect from the customer an amount of money not less than his commission; when the order is filled by Luzier it is either shipped directly to the customer, or to the consultant for delivery to the customer, and the balance of the price is remitted to Luzier at that time. The 33⅓% commission is not forwarded to Luzier but is retained by the consultant and Luzier is not obligated to pay anything to the consultant and does not do so.

Luzier contracted with the federal government for the years in question to pay the federal excise tax on behalf of the retail consultants on all sales of their products. Luzier also, during the years in question, undertook to and did pay to the various states in which the products were sold, on behalf of its consultants, the applicable sales or use tax on the retail price of the product sold. Its federal and state income tax returns for the years in question showed gross receipts in the amount of the total retail sales prices. The commissions retained by the consultants were, on these returns, deducted as part of the costs of doing business. Its profit and loss statement showed "sales (Net) Retail" in the amount of total retail sale prices for its product during the period. From this was deducted field commissions to arrive at its figure for "Wholesale sales". From this figure for "Wholesale sales" were deducted its expenses to arrive at its profit or loss before taxes.

This controversy concerns solely and only the question of whether or not the commissions retained by the consultants should be included by Luzier as part of its "annual gross receipts" for the purpose of computing its manufacturer's license tax due to the City.

The trial court concluded that such commissions were includable and on this conclusion based its judgment. The findings of fact and conclusions of law were, in pertinent part, as follows:

### "FINDINGS OF FACT

The Court finds as matters of fact:

1. That the term 'gross receipts' is a broad term and the commissions in questions are included therein although defendant never receives physical control thereof.

2. That the defendant has constructive control of the commissions in question.

3. That the sales persons may be independent contractors but defendant dictates the terms to the sales persons on how moneys, including commissions, are to be handled and thereby the defendant has constructive receipt of such commissions."

### "CONCLUSIONS OF LAW

The Court concludes as a matter of law:

1. That the sales commissions in question are a part of defendant's gross receipts and should be included in the amount due by defendant for its occupation licenses for the years 1957, 1958, 1959, 1960, and 1961.

2. That no penalties should be assessed against the defendant."

The occupation license tax here in question arises under the provisions of Chapter 30 of the 1956 Revised Ordinances of Kansas City (and prior ordinances containing provisions which are identical for our purposes). Section 30.060 (all references to ordinances refer to the 1956 Revised Ordinances of Kansas City, Missouri, unless otherwise specified) provides that all occupation license taxes shall be annual licenses issued for a calendar year (with exceptions not here pertinent). Section 30.260 provides:

"Sec. 30.260. *Businesses, etc., for which license required.*—Every corporation, company, association, joint stock company or association, partnership and person, their lessees, trustees or receivers appointed by any court whatsoever, engaged in any business, occupation, pursuit, profession or trade, or in the keeping or maintaining of any institution, establishment, article, utility or commodity, in this article and chapter specified shall procure and pay for a license therefor from the city, and such license fees shall be in the respective amount set out in this article and chapter, except as otherwise provided in this revision or other ordinance. (Ord. 17604, 4-2-54.)"

Section 30.1680 sets the tax rate for manufacturers at "Eighty-five cents per

$1,000 of annual gross receipts; minimum per year . . . $15.00."

Section 30.2830 provides:

"Sec. 30.2830. *Computation of fee.* The term 'eighty-five cents (85¢) per $1,000,' or similar terms, as used in any section of this chapter, shall be construed to mean that the license fee or tax therein referred to shall be so computed upon the amount of the 'gross annual business' or 'annual gross receipts' of the business, trade, profession or occupation therein referred to, and the total of such computation shall constitute the amount of the license fee or tax per year * * *."

Section 30.2850 provides:

"Section 30.2850. *Meaning of 'annual gross receipts.'* For the purpose of this chapter, the words 'annual gross receipts' shall be taken to mean twelve times the average monthly gross receipts for the time during which any business in question shall have been conducted, or for the period of one year next preceding the date upon which the required license becomes due, * * *."

Thus our question is whether or not the commissions retained by the consultants come within the term "annual gross receipts" as used in these ordinances. There is no dispute that this money never, in fact, comes to Luzier. The consultants have a right to, and do, retain this 33⅓% of the retail sale price. Under the contract Luzier has no claim on this money. They cannot spend it, or borrow against it, or in any other way exercise dominion over it.

We are asked to hold that these commissions constitute "gross receipts" when they are never "received" by Luzier within the normal meaning of the word "received". The word "receipt" has many meanings and its various meanings are normally governed by the context in which the word is used. 75 C.J.S. Receipt, p. 642, says of this word as follows: "Frequently the word is employed in the plural, as in the term

'gross receipts,' and when so used it signifies that which is received; that which comes in, in distinction from what is expended, paid out, sent away, and the like. When used in a commercial sense, 'receipts' is commonly understood to mean the taking in or receiving obligations or promises to pay, whether written or verbal, as well as cash." In 38 C.J.S. Gross, page 1082, it is said concerning "gross receipts": *"Gross receipts.* Ordinarily, the gross amount of cash received; but its construction and meaning depend on the context and the subject matter, and accordingly it may be construed to mean actual cash collected on particular obligations, together with moneys in hand due the obligors and credited on such indebtedness; the entire receipts without any deduction; 'gross sales', including the gross amount collected and uncollected of all the sales." Webster's New International Dictionary, Second Edition, among other definitions for the word "receipt" states its meaning to be: "that which is received; that which comes in, in distinction from what is expended, paid out, sent away, and the like;—usually in pl.; as, the gross receipts".

In Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 253 S.W.2d 832, our Supreme Court en banc had before it a question of whether certain moneys actually received by the gas company were within the term "gross receipts" as contained in a similar taxing ordinance of the City of St. Louis. In this case, Mississippi River Fuel Corporation supplied natural gas in bulk to Laclede Gas Co., which distributed it to its customers. Mississippi River Fuel Corp. was in extended litigation over lower rates ordered by the Federal Power Commission. If Mississippi River Fuel Corp. was successful in its litigation Laclede would be required to pay the old higher rate; on the other hand, if the Federal Power Commission was sustained by the courts, the gas company would be liable only for the new lower rate. It collected the difference between the old higher rate and the new lower rate from its customers and segre-

gated this difference pending the outcome of the rate litigation. The final decision was that the lower rate prevailed, and the gas company then proposed to refund these segregated moneys representing the difference in rates to the customers from whom they had collected it, pursuant to an order from the Missouri Public Service Commission. A declaratory judgment suit was filed by the gas company against the city to determine whether or not these amounts so collected and held, and now to be refunded, were to be included as part of "gross receipts" upon which taxes would be paid to the city.

In considering the term "gross receipts" our Supreme Court said: "The word 'gross' appearing in the term 'gross receipts,' as used in the ordinance, must have been and was there used as the direct antithesis of the word 'net'. In its usual and ordinary meaning 'gross receipts' of a business is the whole and entire amount of the receipts without deduction. 18 Words and Phrases, Perm.Ed., page 697." The court further said: "The word 'receipts' appearing in the term 'gross receipts,' as used in the ordinance, connotes the monies received and taken in by plaintiff from the sale of gas in the city, as distinguished from the monies paid out or expended. But does this ordinance impose a 5% tax upon, and must the tax due the city be measured by *every dollar* received by plaintiff, even though a portion of the dollars so received by plaintiff do not benefit plaintiff at all, and constitute no yardstick by which to measure the gross income from 'selling or distributing gas for heating, lighting, power or refrigeration?' That question must be answered in the negative."

The court concluded that the moneys taken in, which went into segregated accounts during the rate litigation and are now to be refunded to the customers, would not form part of the gross receipts of the company for tax purposes under the ordinance, even though such money did come into the physical possession of the gas company. The court said: "Consideration of the instant question, therefore, does not compel the ruling that the instant tax must be measured by *every dollar* of gross receipts without regard to the circumstances under which received, and with no regard whatever to the taxpayer's right to keep and use *all* of such gross receipts in its business. And this is particularly true because under this character of ordinance the portion of gross receipts clearly intended to be made subject to the tax must bear a relation to the privilege of doing business within the city and to the right of plaintiff to retain and use the money so received and to benefit therefrom." Its ultimate conclusion was: "We therefore rule that, as used in Ordinance 41325, the term 'gross receipts' means only such receipts from the sale of gas in said city as the plaintiff was entitled to retain and use for the benefit of its business and out of which receipts it could pay and discharge the obligations of its business. The above noted segregated monies did not fall within the term 'gross receipts' as used in Ordinance No. 41325."

On the basis of the foregoing, it would appear to us that the commissions here in issue, which never came into the possession of Luzier, i. e. were never received by Luzier, are not within the meaning of "annual gross receipts" as used in the Kansas City ordinances. Luzier could not use any of these funds for its own benefit.

In its brief, the city attempts to equate the term "annual gross receipts" as used in its ordinance, with the "gross retail sale price" charged and collected by the consultants selling Luzier products. The simple answer to this is that the city tax is not imposed on the retail sale, it is imposed on the privilege of doing business within the city. The tax is not imposed upon the thousands of consultants in the United States, but is imposed on Luzier, who does business in the city. The ordinance does not measure this tax by the total retail sales price, but instead measures the tax by the "annual gross receipts" of Luzier.

The city emphasizes that Luzier reports total retail sales price to the federal goverment when it pays the federal excise tax on behalf of the retail consultants. It, likewise, reports total retail sales price when it pays state sales or use taxes to the various states on behalf of the retail consultants. In each instance the tax there in question is imposed on the sale itself. In each instance, the individual consultant, who makes the sale at retail, would be liable for reporting and paying such tax on his total retail sales. However, for reasons of expediency, Luzier makes those various payments on behalf of the many consultants, and such taxes can be reported and paid only on the basis of total retail sales price, since it is the sale itself on which the tax is imposed and it is the retail sales price by which the amount of the tax is measured. Thus the fact that Luzier so reported its total retail sales price for those purposes has no real significance in determining the amount of "annual gross receipts" for the purpose of measuring Kansas City's occupation license tax. Likewise, the fact that Luzier reports total retail sales in its state and federal income tax is of no significance because the commissions retained by the consultants are deducted as a cost of doing business and the tax is imposed on the net taxable income and not on the gross. The resulting tax would be the same whether it is retail sales, less a deduction for commissions retained, which are reported, or whether only the amount actually received by Luzier is reported, and no deductions claimed for the commissions retained by the consultants. On the other hand, the use of the two different figures for federal excise tax and for federal income tax reports and for state sales tax and state income tax reports, could only lead to unnecessary confusion when the two are compared.

Again, the fact that in its profit and loss statement Luzier shows the total retail sales price, less commissions, in arriving at its figure for wholesale sales, before deducting its expenses, instead of showing only the net figure for wholesale sales has no significance. The resulting profit or loss is the same in either instance.

In its brief the city argues that the consultants do not work for nothing; that they must be paid in some way; and that thus Luzier receives benefits from the monies retained by the consultants as commissions the same as they would if the total retail sale price was remitted to Luzier and Luzier then paid a commission of 33⅓% to the consultants. It then argues that, because of this benefit and because Luzier fixes the amount of commission to be retained by the consultants and because Luzier suggests or fixes the retail sale price of its products, Luzier constructively receives the total retail sale price, although the commissions are in fact retained by the consultants and never actually received by Luzier. The city does not cite any authority supporting this argument (except the California case of Anders v. State Board of Equalization, 82 Cal.App. 2d 88, 185 P.2d 883, where the opinion is based on a construction of the wording of the stipulation on which the case was submitted, and which is not persuasive) nor does it cite any ordinance provision which would authorize the inclusion of such monies in "annual gross receipts". We can see no significant difference between the situation presented in the case at bar and the retail mark-up over wholesale price, which is kept by the retailer. In either case the retailer (here the consultant) has a right to and does keep his mark-up (here the 33⅓% commission) and the manufacturing supplier (here Luzier) only has a right to and only receives its wholesale price. We are not persuaded that the fiction of constructive receipt or control is applicable to the case at bar.

Section 30.210 of the ordinances of Kansas City requires the taxpayer to include in his license application "the true amount of annual gross receipts of his business". We conclude that this requirement was complied with when Luzier reported as annual gross receipts all of the

moneys that it actually received from the sale of its products by its consultants. The commissions which were retained by the consultants were never received by Luzier and did not constitute part of its gross receipts. It follows that Luzier has properly reported its gross receipts and paid all taxes due thereon. Therefore, the judgment below is reversed.

All concur.