ITT CANTEEN CORPORATION et
al., Respondents,

v.

James SPRADLING et al., Appellants.

No. 58786.

Supreme Court of Missouri,
Division No. 2.

July 14, 1975.

Armstrong, Teasdale, Kramer & Vaughan, Thomas E. Wack, St. Louis, for respondents.

John C. Danforth, Atty. Gen., Mark D. Mittleman, Asst. Atty. Gen., Jefferson City, for appellants.

HENRY I. EAGER, Special Commissioner.

This is a declaratory judgment action filed primarily for the purpose of declaring void Amended Rule No. 87 of the Department of Revenue (effective January 31, 1974) which requires the inclusion and payment of sales tax upon the amount received by a retail seller in payment of the Missouri Cigarette Tax (nine cents a package). The plaintiffs sell cigarettes only through vending machines. The petition also sought to extend the remedy sought, in two counts filed as class actions, to all others selling cigarettes and tobacco products in Missouri through vending machines. The case was submitted below and is submitted here upon an agreed statement of facts. The trial court granted plaintiffs the relief sought, declared the amended rule to be void, enjoined its enforcement, and extended the ruling to all other like vending machine operators in Missouri by virtue of a stipulation to the effect that the judgment would be binding upon the stated class "so long as the Missouri state sales tax remains a gross receipts tax upon the seller and the Missouri cigarette excise tax remains a levy upon the consumer required to be collected

by the seller." We have jurisdiction because the revenue laws are involved.

The history of the matter is substantially as now set forth. From the inception of the Missouri Sales Tax in 1935 until 1971 the Revenue Department had made no claim that the Missouri sales tax (now Ch. 144, Sections 144.010 to 144.745, RSMo 1969, V.A.M.S.)[1] should be computed and collected upon the amounts paid by purchasers to retail sellers of cigarettes under the Missouri Cigarette Tax Law (which was Ch. 149, Sections 149.010 to 149.110, at the time this suit was filed, but repealed and amended in HB 1612, 2nd Regular Session 1974, Missouri Legislative Service, V.A.M.S. No. 2, p. 220, approved June 18, 1974). Consequently, retailers did not include the amounts of the cigarette tax in their returns. In 1971 the Revenue Department notified ITT Canteen Corporation of a deficiency in its sales tax payments from October 1, 1968—September 30, 1970, solely by reason of the failure to include the amounts of the cigarette taxes received by it; at that time no rule or regulation had been promulgated. Canteen, as we shall designate it, paid the amount under protest, exhausted its administrative remedies without success and petitioned for a judicial review in the Circuit Court of St. Louis County. That review was held before Judge Orville Richardson who, on October 3, 1972, issued a memorandum and order reversing the decision of the Revenue Department and its Director and ordering the return of the money so paid under protest. In that memo and order the Court found and held: that the cigarette tax was not a part of the price upon which the sales tax was imposed; that the cigarette tax was in fact a levy "on the consumer or user" and was legally imposed upon him, with the seller (although paying the tax) "acting merely as agent for the state for the payment and collection of the tax"; that the sales tax was a direct levy upon the seller, imposed upon the purchase price for the privilege of selling; that the incidence of the cigarette tax attached only at the time the sale was made, and did not accrue until the sale was consummated; that it did not become a part of the "purchase price paid"; that no specific deduction was necessary in the sales tax provisions because the "controverted item" did not even fall within the general definition of "gross receipts." The Court ordered the return of the money paid, and that the amounts of the cigarette taxes be deducted thereafter in computing sales taxes due. The Revenue Department appealed from the judgment, but dismissed its appeal on January 15, 1973. It returned to Canteen the money paid under protest ($15,528.28) and also returned to 28 other vending machine operators the sum of about $150,000. It then promulgated its first Rule on the subject, No. 87, conforming to Judge Richardson's ruling, thus restoring its previous practice. No different position was taken until about the end of 1973, when the Department promulgated the now contested *Amended* Rule 87, effective January 31, 1974, providing: "Persons selling cigarettes and tobacco products, including vegetable cigarettes and the like, are required to collect and remit sales tax on the total selling price paid or charged, whether sold through vending machines or otherwise, allowing no deductions whatsoever for federal taxes. Vendors selling cigarettes through vending machines may not claim state cigarette tax of nine (9) cents per package as a deduction when filing their returns." There had then been no new legislation in either the Sales Tax Law or the Cigarette Tax Act. In February, 1974, plaintiffs filed the present suit. It will not be necessary to discuss the pleadings, for the issues pleaded sufficiently cover the points raised in the briefs. We should note at this point, however, that in Count I of the petition plaintiffs allege that the decision of Judge Richardson is "final and binding upon defendants," and in Count II they seek to extend this principle to the class of vendors which they allegedly represent. In Count III plaintiffs allege

1. Statutory references will be to that revision unless otherwise stated.

that the *Amended* Rule and the practice sought to be thus enforced, are void on the merits, and in contravention of the statutes; in Count IV it is sought to extend the effect of these allegations to the class of vendors represented.

At this point, for clarification, we quote certain parts of the applicable statutes. First, the Sales Tax: Section 144.010(4): " 'Gross receipts' means the total amount of the sale price of the sales at retail * * * whether received in money or otherwise; * * * For the purposes of sections 144.-010 to 144.510 the total amount of the sale price above mentioned shall be deemed to be the amount received."

Section 144.010(8): " '*Sale at retail*' means any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration; * * *."

Section 144.020(1): "*Rate of tax.*—1. A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state."

Section 144.021: "*Imposition of tax—seller's duties.*—The purpose and intent of sections 144.010 to 144.510 is to impose a tax upon the privilege of engaging in the business, in this state, of selling tangible personal property * * * all sellers to report to the director of revenue their 'gross receipts', defined herein to mean the aggregate amount of the sales price of all sales at retail, and remit tax at three percent of their gross receipts."

Section 144.060: "*Purchaser to pay sales tax—refusal, a misdemeanor—exception.*—It shall be the duty of every person making any purchase or receiving any service upon which a tax is imposed by sections 144.010 to 144.510 to pay, to the extent possible under the provisions of section 144.-285, the amount of such tax to the person making such sale or rendering such service; any person who shall willfully and intentionally refuse to pay such tax shall be guilty of a misdemeanor; * * *."

The Cigarette Tax Act, RSMo 1969, Ch. 149, was in part as follows:

Section 149.020. "*Tax levy, stamps to be affixed.*—1. A tax shall be paid on the sale of cigarettes made of tobacco, or any substitute for tobacco, of four and one-half mills per cigarette.

"2. This tax shall be paid by affixing stamps in the manner and at the time set forth in this chapter. The stamps shall be affixed to each individual package of cigarettes by the person who first sells the cigarettes within this state. All cigarettes must be stamped before being sold in this state.

"4. Every person required to pay this tax shall add the amount of the tax to the sales price of the cigarettes, it being the purpose and intent of this law that the tax is in fact a levy on the consumer or user with the person first selling the cigarettes acting merely as an agent of the state for the payment and collection of the tax to the state."

Section 149.040: "*Refund of tax granted, when—rules and regulations.*—Whenever any cigarettes upon which stamps have been placed have been sold or shipped into another state for sale or use there or have become unfit for use and consumption or unsalable, or have been destroyed, the wholesaler shall be entitled to a refund of the actual amount of the tax paid with respect to such cigarettes. * * *"

A new Cigarette Tax Act was enacted in 1974; it will be referred to in the body of this opinion. On July 12, 1974, the trial court filed in the present case a memorandum opinion and its decree; therein it held, on agreed facts: that despite procedural differences Judge Richardson's decision and order were binding, the legal issue being identical (thus apparently holding that the judgment was *res adjudicata*); that, more-

over, even if that be not true it would follow the decision on the doctrine of "stare decisis"; that alternately plaintiffs were entitled to judgment on the merits both under the old and new Cigarette Tax Acts; that the cigarette tax was not a part of the "sales price," but was an amount "added to" the sales price; that the legal incidence and economic burden of the tax was only upon the ultimate buyer; that the seller received no benefit from the collection of the tax, but only fulfilled a statutory duty; that the one first selling the cigarettes was merely an agent for the State, and that the new Act went further and provided that if anyone other than the consumer paid the tax, it should be considered as an "advance," to be recovered from the ultimate consumer; also, that the ultimate liability for the cigarette tax accrued only when a sale was actually made to the customer; that consequently the amount of the cigarette tax was not a part of the "gross receipts" for sales tax purposes. Counts II and IV (the class actions) were considered as determined by the stipulation. The *Amended* Rule was adjudged to be void, and its enforcement was enjoined as was the enforcement of any similar rule. This appeal was duly filed.

■ We are met first with the contentions in the briefs, pro and con, that the decision and order of Judge Richardson were or were not *res adjudicata* or to be considered as a collateral estoppel. Dozens of authorities are cited and the principles are discussed in much detail. One difference between the parties is whether the two proceedings involve the same or substantially different questions of fact; another is whether the applicable law has been changed. Plaintiffs insist that the principle to be considered is not *res adjudicata*, but collateral estoppel; if either were to be applied, we would be inclined to agree. Before the amendment of Rule 87 this Court adopted opinions in *Robert Williams & Co., Inc. v. State Tax Comm. of Mo. et al.*, 498 S.W.2d 527 (Mo.1973) and *Fabick and Co. v. Schaffner et al.*, 492 S.W.2d 737 (Mo.1973).

After the amendment of the Rule but before the decision below, the legislature enacted and the Governor signed a new Cigarette Tax Act (repealing the old one). Defendants contend strenuously that these developments effected a change in the applicable law. While we do not, at this point, rule that they did or did not, we feel that they do present an arguable question of law which we must decide. Hence, we determine that this case should not be decided on either *res adjudicata* or collateral estoppel and, as a practical matter, there should be a determination here on the merits in any event. To do otherwise would only invite future litigation.

Those portions of the new Cigarette Tax Act which we should note (HB 1612, 2nd Regular Session 1974, Missouri Legislative Service, V.A.M.S. No. 2, p. 220) are as follows:

"SECTION 2. 1. A tax shall be levied upon the sale of cigarettes at an amount equal to four and one-half mills per cigarette.

"2. The tax shall be evidenced by stamps which shall be furnished by and purchased from the director * * *

"4. It shall be the intent of this chapter that the impact of the tax levied hereunder be absorbed by the consumer or user and when the tax is paid by any other person, the payment shall be considered as an advance payment and shall thereafter be added to the price of the cigarettes and recovered from the ultimate consumer or user with the person first selling the cigarettes acting as an agent of the state for the payment and collection of the tax to the state.

"5. In making sales of cigarettes in the state, a wholesaler shall keep a record of the amount of tax on his gross sales. The tax shall be evidenced by appropriate stamps attached to each package of cigarettes sold."

Plaintiffs and defendants have argued and briefed the effect of the new statute,

assuming its applicability, although effective on August 13, 1974. Since this is a declaratory judgment suit, we shall consider it. This case presumably involves cigarette taxes accruing for an indefinite period after January 31, 1974. The trial court considered and ruled upon the effect of the new Act. That Act contains many provisions obviously directed at the elimination of fraud, bootlegging of stamps and the avoidance of the tax. This would seem to have been its chief purpose.

�appear▅ The primary contention of the defendants, the Director and the Department of Revenue, is that the Court must consider *only* the provisions of the Sales Tax law, and may *not* consider the cigarette tax laws, old or new. The reasoning is that the issue here is a sales tax issue, that the tax is levied upon the business of selling personal property, that all sellers are required to report and pay the tax upon their "gross receipts," and that this term means the "total amount of the sale price of the sales at retail  *  *  *"; and further that "the total amount of the sale price  *  *  * shall be deemed to be the amount received." The seller was and is required to collect the sales tax from the purchaser (§ 144.021), a specific duty is imposed upon the purchaser to pay the tax (§ 144.060), and a willful refusal to do so was made a misdemeanor. Defendants say, in other words, that the taxable gross receipts are the "amount received" by the seller, and that this includes the nine cent tax paid by the purchaser to a retailer for a package of cigarettes. Defendants further contend that the "legal incidence" of the cigarette tax upon the consumer and the time of its imposition are immaterial because the provisions of the cigarette tax law may not be considered on this issue. We hold to the contrary, as hereinafter noted.

Plaintiffs say that the sales tax must, in this connection, be considered along with the applicable provisions of the Cigarette Tax Act (Ch. 149, RSMo 1969, V.A.M.S.) which provided, among other things: that the stamps should be affixed by the first

seller; that every person required to pay the tax should "add the amount of the tax to the sales price of the cigarettes" and that the purpose and intent of the law was that the tax was "in fact a levy on the consumer or user with the person first selling the cigarettes acting merely as an agent of the state for the payment and collection of the tax to the state." The Act also provided for refunds to the wholesaler on cigarettes which had become unfit for use or consumption (as indeed the new Act also does).

▅▅▅ Generally, statutes on similar subject matters are regarded as in *pari materia*, and must be considered together even though enacted at different times and found in different places. *City of St. Louis v. Carpenter*, 341 S.W.2d 786 (Mo.1961); *State ex rel. Central Surety Ins. Corp. v. State Tax Comm.*, 348 Mo. 171, 153 S.W.2d 43 (1941); *State ex rel. Smithco Transport Co. v. Public Service Comm.*, 316 S.W.2d 6 (Mo. banc 1958); *State ex rel. Wright v. Carter*, 319 S.W.2d 596 (Mo. banc 1958); *Collier v. Roth*, 468 S.W.2d 57 (Mo.App. 1971). And the Court should, if possible harmonize such statutes. Defendants seek to distinguish these cases (or certain ones of them) on their facts, but we hold that the subject matter of the two Acts is sufficiently related to require our consideration of the Cigarette Tax Act. In doing so we are merely considering a subject and a tax to which the sales tax is specifically claimed to apply. This, in itself, creates a relationship between the two, and we should consider the nature and meaning of the cigarette levy, as bearing upon the provisions and applicability of the Sales Tax Act. It is true that the legislature has the right to define its own terms, but the courts have the right to construe its definition.

We first consider the 1969 revision of the statutes, under which this suit was instituted. Plaintiffs' principal contentions are, as indicated: that the legal incidence of the cigarette tax falls upon the purchaser or consumer, that the tax is not imposed until the moment of sale, that the seller acts

merely as an agent for the State, and that the tax is not a part of, but is "added to" the sales price, that there can be no sales tax imposed upon the tax as if upon a preexisting sale, and that there is no cigarette tax upon the seller. Missouri has not decided the issue here. Under analogous (but, of course, not identical) statutes, the following authorities lend much credence to plaintiffs' contentions. *Blackmon v. Coastal Service, Inc.*, 125 Ga.App. 28, 186 S.E.2d 441 (1971), aff. 229 Ga. 471, 192 S.E.2d 372 (1972); *American Oil Co. v. Mahin*, 49 Ill.2d 199, 273 N.E.2d 818 (1971); *Dick's Vending Service, Inc. v. Dept. of Revenue*, 53 Ill.2d 375, 293 N.E.2d 129 (1972); *Standard Oil Co. v. State*, 283 Mich. 85, 276 N.W. 908 (1937); *Standard Oil Co. of Indiana v. State Tax Commissioner*, 71 N.D. 146, 299 N.W. 447 (1941); *Ross Jewelers, Inc. v. State*, 260 Ala. 682, 72 So.2d 402 (1954); Revenue Ruling 60–224, CCH Federal Tax Reporter, ¶ 6522. These authorities emphasize the incidence of the tax on the consumer, its imposition at the time of sale, and the fact that it is an amount *"added to"* the sale price. The cases thus cited *did* consider the nature of the excise tax and its incidence, and did apply its provisions, along with the provisions of the sales (or other) tax, the enforcement of which was being sought. The Illinois statute referred to amounts received as "consideration" for the sale (which defendants say is a distinction), but that court adopted also other principles (as mentioned above) sufficient to rule out the double tax. The Georgia Court of Appeals said (Blackmon): "The principle of those cases is that if the imposition of taxes, such as those involved here on cigarettes, falls upon the consumer or the incident of the sale by the retailer to the consumer they are not included as part of the retail sale price for calculating the sales and use tax; if, however, the tax is imposed at a time prior to the point of retail sale or other consumer transaction, it is an element of the cost of the property sold and must be included as part of the retail sale price for purposes of calculating the sales and use

tax. In determining the point at which any such tax falls, primary consideration must be given to the applicable taxing statutes, to which we now turn." As a practical matter we simply cannot recite here the facts and the applicable statutes involved in the foregoing cases. We have considered them.

In *ITT Canteen Corp. v. Porterfield*, 30 Ohio St.2d 155, 283 N.E.2d 124 (1972), cited and discussed by defendants, the Court held that the amounts paid for the cigarette tax should be included in the base for the sales tax on the seller. That Sales Tax Act provided that the tax should be advanced by the wholesaler and added to and collected from the purchaser " ' * * * *as part of the retail price* of the cigarettes * * ' " ; it defined "price" as the " ' * * * aggregate value in money * * * without any deduction on account of the cost * * * or any other expense.' " (Italics ours.) The Court held that the cigarette tax was an expense and, as noted, the tax was expressly made a *part of* the sale price.

Our Cigarette Tax Act (1969) provided that the "person" required to pay the tax *"shall add"* the amount to the "sales price" and that the intent of the law was "that the tax is in fact a levy on the consumer or user with the person first selling the cigarettes acting merely as an agent of the state * * *." The tax was to be refunded if, before final sale, the cigarettes became unusable. We have already held that this Act may properly be considered with the Sales Tax Act. When so considered, it constitutes a valid supplement to the Sales Tax Act. The amount of the cigarette tax is *not* a part of the sales price; it is a levy on the consumer imposed at the time of the retail sale, and the seller is a mere agent for collection. Thus considered, the amount of the cigarette tax was not properly includable in the sales tax base under the 1969 statutes, and we so hold. Defendants have argued that plaintiffs did physically receive the tax and that it became a part of the "amount received" under the Sales Tax Act. They did so receive it,

but as agents for the State, and they had no personal interest in the amounts so received. We shall not consider the term "amount received" in isolation, as used in the Sales Tax Act. As supplemented by the Cigarette Tax Act, the term, which is somewhat ambiguous, must be held to mean amounts received for the seller's benefit and use; in our situation it was not so received. The context in which the term is used, i. e., such as to include "services" valued in money, consideration received "otherwise" than in money, and excluding amounts refunded on property returned, serves to corroborate our conclusion. See, for analogy, *State v. Hallenberg-Wagner Motor Co.*, 341 Mo. 771, 108 S.W.2d 398 (1937). The Cigarette Tax Act clearly regards the sales price of cigarettes as the amount received *exclusive* of the cigarette tax (§ 149.020(4)). So considered, the two Acts are not in conflict; and the term "amount received" does not have the conclusive meaning attributed to it by defendants. We thus hold that, as of the time of suit, the sales tax could not legally be collected on the amounts of the cigarette tax.

Defendants claim, however, that the situation has been changed by the terms of the new Cigarette Tax Act (cited and quoted above) and the effect of two cases decided by this court; first, we look at the cases. In *Fabick and Company v. Schaffner et al.*, 492 S.W.2d 737 (Mo.1973), a Jefferson City Sales Tax Ordinance, based upon and incorporating the State Sales Tax Law, was involved. The issue was whether the taxpayer, located in Jefferson City, must pay on sales of equipment sent to other parts of Missouri. The Court held that, since the amendment of the Sales Tax Act in 1965 adding Section 144.021 and amending other sections, the tax had been changed from a transaction tax upon the sale to a gross receipts tax, that the tax burden was upon the seller for the privilege of doing business, and that the place of business of the seller controlled on the applicability of the tax. The only point decided there which could possibly be applicable is that the tax

is now a gross receipts tax. That does not decide or materially affect our issue. The cigarette tax was in no way involved, nor was any other excise tax. We still have the duty and the right to construe the meaning of the terms used in the Sales Tax Act, as supplemented by the Cigarette Tax Act.

In *Robert Williams & Co., Inc. v. State Tax Comm. of Mo. et al.*, 498 S.W.2d 527 (Mo.1973), a merchant's *ad valorem* tax was involved; the Board of Equalization included the amounts of certain federal and state taxes paid on liquor and cigarettes in its assessment of the value of plaintiff's inventory. The Court held that this was permissible, since the amount of the taxes paid constituted money invested in the merchandise. The Court had no occasion to consider the ultimate incidence or burden of the cigarette tax or any sales tax question. The Court simply held that the taxes had been paid by somebody, and that these amounts entered into the *present value*, for assessment, of the goods. The Court did note that the payment of the taxes was essential to a sale of the products and to the right to sell them. Defendants, in our case, refer to this as indicating a benefit to plaintiffs; they do so because plaintiffs say that there was no consideration to the sellers from the collection of the cigarette tax. No sales tax was involved in Williams and no issue of "gross receipts." The Court did not consider the nature of the cigarette tax or the time of its imposition; nor did it consider the agency provision of the cigarette tax law, making the seller the agent for the state; nor did it note the fact that, since the price of the cigarette stamps had already been advanced to the state, the sale was already made lawful, and only a collection for reimbursement remained. Even if the right to sell be considered as a benefit in our case (which is at least doubtful), we do not regard it as sufficient to make it a part of the "amount received" as we have construed it above under the statutes. There was no real consideration to the plaintiffs-sellers here for the collection of the taxes. The two cases last discussed *did*

not effect any substantial change in the law as it affects our case.

We note here, largely because the parties have argued at length about them, the cases of *Laclede Gas Co. v. City of St. Louis*, 363 Mo. 842, 253 S.W.2d 832 (banc 1953), and *Kansas City v. Luzier, Inc.*, 420 S.W.2d 63 (Mo.App.1967). The principal determination in those cases was that money which was not received and retained by a taxpayer for its own use and benefit did not constitute a part of its "gross receipts" under license tax ordinances. Defendants say they are inapplicable because the ordinances did not define "gross receipts" as it is defined here. Be that as it may, they are worthy of note on the general principle.

It remains for us to determine whether the re-enactment of the Cigarette Tax Act in 1974, as already cited, changed the essential effect of the law. The principal changes which defendants claim to negate the material features of the previous act, as we have noted them heretofore, are (old and new compared). Old: "Every person required to pay this tax shall add the amount of the tax to the sales price * * it being the purpose and intent of this law that the tax is in fact a levy on the consumer or user with the person first selling the cigarettes acting merely as an agent of the state for the payment and collection of the tax to the state * * * when any cigarettes upon which stamps have been placed * * * have become unfit for use * * or destroyed the wholesaler shall be entitled to a refund * * *." New: "4. It shall be the intent of this chapter that the impact of the tax levied hereunder be absorbed by the consumer or user and when the tax is paid by any other person, the payment shall be considered as an advance payment and shall thereafter be added to the price of the cigarettes and recovered from the ultimate consumer or user with the person first selling the cigarettes acting as an agent of the state for the payment and collection of the tax to the state.

"5. In making sales of cigarettes in the state, a wholesaler shall keep a record of the amount of tax on his gross sales * *." The provision for recovery from the ultimate consumer or user is new. The new Act provided for refunds of the tax on cigarettes which became unfit for use, as did the old one.

Defendants say: that the term "impact of the tax" is not the same as "a levy on the consumer or user"; that the word "merely" was omitted in the new law in describing the seller as an "agent"; and that the new law adds provisions that the wholesaler shall keep a record of the amount of tax on his "gross sales," obtain a license, etc. We hold that the change of "levy" to "impact" is insubstantial, as is also the omission of the word "merely." "Impact" generally implies the force of a thing upon something (Webster's Third New International Dictionary). The force of a tax upon someone would seem to be the equivalent of a levy upon him. The omission of the word "merely" was wholly immaterial; if one is an "agent" he is an agent, whether "merely" so or not. Both acts provide that the tax shall be *"added to"* the sales price; this is the crucial feature and there was no change. Both acts provide for advancement of the tax, to be recovered from the consumer. The requirement that wholesaler shall keep records is certainly not equivalent to the levy of the tax upon him, nor is the requirement of a license. It is a little difficult to understand defendants' contention that this tax is one on the wholesaler; the statute simply does not justify that contention. The context and meaning of both acts are that the wholesaler merely advances the price of the stamps and bills it to the retailer who collects it from the consumer. The requirement of keeping a record is simply a safety precaution. The tax is not one on the wholesaler.

Some analogy may be noted in the case of *Automatic Retailers of America, Inc. v. Morris*, 386 S.W.2d 901 (Mo. banc 1965). There, as in our new Cigarette Tax Act, the seller was required to remit the taxes collected or required, and the purchaser was

required to pay the tax. The Court held, this being a transaction tax (prior to 1965), that it was levied upon the purchaser and that the language was not sufficient to impose a tax on the seller. A similar intent in our re-enacted Cigarette Tax Act places the incidence of the tax upon the purchaser.

▮ Both acts provide for a refund of the tax on cigarettes which have been destroyed or have become unusable; in other words, there is no tax unless the sale to a consumer is consummated. It seems obvious that the purpose and intent of the new act were to include very detailed provisions to protect the State against "bootlegging" or cheating on the tax. We find no intent therein to change our conclusion that the incidence of the tax was and is on the *consumer,* imposed at the time of the retail sale, that the tax was to be an item *"added to"* the sales price and not a part thereof, and that the seller is an agent for the State. A sales tax can only be collected from a seller. In other words, we find that the re-enactment of the Cigarette Tax Act did not change the nature or effect of the previous law or the conclusions which we have heretofore drawn.

▮ It has been impossible to consider and discuss the scores of cases cited here by the parties pro and con. We have considered all of those which seem reasonably applicable. We note here that in tax cases the law is strictly construed against the taxing agency, and specific or clearly implied authority for a tax must be shown. *State ex rel. Ford Motor Co. v. Gehner,* 325 Mo. 24, 27 S.W.2d 1 (banc 1930); *State ex rel. Agard v. Riederer,* 448 S.W.2d 577 (Mo. banc 1969); *Kansas City v. Frogge,* 352 Mo. 233, 176 S.W.2d 498 (1943); *State v. Phillips Pipe Line Co.,* 339 Mo. 459, 97 S.W.2d 109 (banc 1936). This should be especially true of a tax upon a tax.

▮ While we do not regard it as in anywise binding, we consider also the fact that the Revenue Department did not claim for a period of many years, and until 1971,

that the sales tax should be collected upon the amounts paid for cigarette taxes, although the same definition of "gross receipts" has appeared in the sales tax law at least since 1939 (Section 11407, RSMo 1939). Such administrative constructions may be considered by the courts. If our conclusions are unsatisfactory to the legislature, it may readily amend one or both statutes.

We do not affirm that part of the judgment finding and holding that the prior judgment of Judge Richardson in Cause No. 331,621 of the Circuit Court of St. Louis County is *res adjudicata* or binding as a collateral estoppel. Counts I and II of the petition should be dismissed. The judgments on Counts III and IV are affirmed; those factual allegations of Counts I and II which were incorporated into Counts III and IV by reference may still be considered as parts of Counts III and IV. The Court should, upon the entry of judgment, set out in words or substance the stipulation of the parties for reference in the event of a change in the law hereafter. The Court will, upon receipt of our mandate, modify its judgment as suggested herein. Otherwise it is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.