**A. P. GREEN REFRACTORIES COMPANY, Respondent,**

v.

**STATE TAX COMMISSION OF MISSOURI, Appellant.**

**No. WD 31753.**

Missouri Court of Appeals, Western District.

Aug. 11, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 15, 1981.

Application to Transfer Denied Oct. 13, 1981.

John D. Ashcroft, Atty. Gen., Mary C. P. Pincus, Asst. Atty. Gen., Jefferson City, for appellant.

Owen T. Armstrong, Thomas F. Schlafly, Lowenhaupt, Chasnoff, Freeman, Armstrong & Mellitz, St. Louis, for respondent.

Thomas C. Walsh, St. Louis, for amici curiae.

Before SOMERVILLE, C. J., and SHANGLER and MANFORD, JJ.

SHANGLER, Judge.

This appeal involves corporate tax liability under the revenue laws of this state. The circuit court on review reversed the determination by the State Tax Commission and directed judgment to the Missouri Supreme Court on the premise that the subject matter involved construction of the revenue laws of the state. Mo.Const. Art. V, § 3 (1945) as amended. The formal order of the Supreme Court thereafter transferred the cause to this district of the Court of Appeals where jurisdiction now presumptively rests. Mo.Const. Art. V, § 11 (1945) as amended. That mandate, however, neither adjudicates appellate jurisdiction, nor precludes reexamination of that question on full consideration of briefs and arguments, nor prevents retransfer to the constitutional forum. *Collector of Revenue, etc. v. Parcels of Land, etc.*, 566 S.W.2d 475, 476[1] (Mo. banc 1978).

The litigation concerns the corporation income tax returns filed by A. P. Green Refractories Company for years 1971, 1972 and 1973. The income in dispute consists of royalties paid to the taxpayer from foreign corporations for the use of the A. P. Green trademarks, trade names and manufacturing processes. The sums payable were defined by the terms of contract between the taxpayer and each foreign corporation. The source of the royalties in every case was from the business of the foreign corporation conducted wholly outside the United States.[1] On its returns for years 1971 and 1972 the taxpayer excluded these foreign royalties from its gross income. On its return for year 1973 the taxpayer included the foreign royalties, but later amended the return to exclude income from that source and made a claim for a refund. The Department of Revenue audits treated the royalties for each of the three years as part of the gross income of the corporation, computed the tax liability on that basis, and assessed a deficiency against the taxpayer for years 1971 and 1972 and denied refund for year 1973. The State Tax Commission came to the same determination.

In addition to all the income derived from sources within Missouri, the taxpayer for each year of return employed the single factor method defined in the extant statutes[2] to allocate for taxation—by the statutory formula—income from transactions

---

1. The judicial review of the decision of the State Tax Commission was submitted on an agreed statement of the case. These salient facts are undisputed. The stipulation also recites that the petitioner A. P. Green Refractories is a Delaware corporation qualified to do business in Missouri. The principal office of the corporation is in Mexico, Missouri. It is a successor to the former A. P. Green Fire Brick Company, a Missouri Corporation.

2. The single factor method for corporate income allocation for years 1971 and 1972 was governed by § 143.040 [repealed 1972], and for year 1973 was governed by §§ 143.431 and 143.451 [effective 1973].

partially in this state and partially in other states.[3] The return excluded from the taxable base income from transactions wholly outside the state—the royalty payments under the contracts with the several foreign corporations.

To justify the exclusion of the royalty income from Missouri taxation, the taxpayer relies on the declaration in *Artophone Corp. v. Coale*, 345 Mo. 344, 133 S.W.2d 343, 346[1] (1939), that the legislative policy of the tax laws is to avoid any discrimination between a domestic and a foreign corporation and, to that end, they design *to tax* the net income from *all sources in this state*, and where the corporate transactions are partly in this state and partly in other states *to tax that portion of the income derived from the Missouri part of the transactions,* and *to exclude from a tax income from sources wholly outside this state.* The taxpayer relies most particularly on *A. P. Green Fire Brick Company v. Missouri Tax Commission*, 277 S.W.2d 544 (Mo.1955), where § 143.040 [which governed the year 1971 and 1972 tax returns] was found to embody the same legislative policy as the predecessor tax statutes [l.c. 546]—*to impose no tax on income of any corporation, domestic or foreign, from sources wholly without this state*—and so to exclude from the tax royalty income paid the domestic corporation for the use of trademarks and manufacturing processes by foreign corporations from activity wholly outside this state. The taxpayer as corporate successor to *A. P. Green Fire Brick Company,* argues the collateral estoppel effect of that decision to prevent the repeated litigation of the tax liability for royalty income from an altogether foreign source and to adjudicate the issue conclusively in favor of the taxpayer.[4]

The administrative agency does not doubt that a corporation may elect to allocate to Missouri transactions partially in this state and partially in another state by a separate account of those transactions—and that when thus separately defined, income from sources wholly outside of this state is not a factor of the tax computation—but contends that when those transactions are so mixed that the taxpayer elects to employ the single factor formula of § 143.040.2 [repealed 1972] and § 143.451.2(2)(a) [effective 1973] for allocation, the statutes compute the tax on the income from all sources.[5]

**3.** A corporate taxpayer may allocate its income in one of the several alternative ways authorized by the statutes [including the provisions of the Multistate Tax Compact—§ 32.200 et seq.] See: *M. V. Marine Co. v. State Tax Commission of Missouri*, 606 S.W.2d 644, 648[3] (Mo. banc 1980).

**4.** The assertion for the collateral estoppel effect of the year 1955 A. P. Green Fire Brick Company decision to preclude the administrative agency assessment of tax liability on the royalty income rests on the agreed facts that: the subject matter of the 1949 corporation income tax return in the *A. P. Green Fire Brick Company adjudication,* supra, was royalty income of the same nature and from the same sources—wholly outside the state—as received by successor A. P. Green Refractories Company in years 1971, 1972 and 1973, and that the 1949 tax return was prepared in the same manner [presumably] by the single factor method of allocation authorized by § 140.040.2 [repealed 1972] and by successor § 143.451.2(2).

**5.** To the extent relevant § 143.040 [repealed 1972] provides:

1. Each year, at the times and in the manner now or hereafter provided, a tax shall be ...

paid by every corporation, ... authorized or existing under the laws of this state, and by every corporation, joint stock company and joint stock association, licensed to do business in this state ... in such percent, as now or hereafter provided, of the net income *from all sources in this state during the preceding year.* Income shall include all gains, profits and revenue from the transactions of the business of the corporations in this state, including gains, profits and revenue from the doing in this state of such portions of each transaction of the business of the corporation which transaction is partly done in this state and partly done in another state or states, and all other income from sources in this state as income is otherwise defined ....

2. Where income results from a transaction partially in this state and partially in another state or states, and income and deductions of the portion in the state cannot be segregated, then such portion of income and deductions shall be allocated in this state and other state or states as will distribute to this state a portion based upon the portion of the transaction in this state and the portion in such other state or states. The taxpayer may elect to compute the portion of income from all sources in this

In reprise, therefore, the litigants focus contention on the year 1955 *A. P. Green Fire Brick* rationale and on the provisions of § 143.040 [and successor § 143.451] that corporation income from *sources* entirely outside Missouri is not taxable by Missouri. The enactment of the Multistate Tax Compact [§§ 32.200 to 32.260] in year 1967, however, adds a dimension to the tax laws not extant at the time *A. P. Green Fire Brick, Artophone Corp.* and their antecedents declared the foreign source rule, and so the tax statutes in effect thereafter can be understood only *in pari materia* with the Multistate Tax Compact. The new dimension is an inquiry redirected from *source* of the income to *jurisdiction of the other state to tax* the income [*M. V. Marine Co. v. State Tax Commission*, 606 S.W.2d 644 (Mo. banc 1980), l.c. 649[4, 5]:

[In the earlier cases] determination of whether a particular taxpayer was entitled to a portion involved a tortured process of discerning the "source" of the taxpayer's income. We find the analysis used in such earlier cases no longer applicable in light of the adoption of the Multistate Tax Compact ... *The advent of the Compact has simplified the process of determining entitlement to apportion taxes by changing the focus of the inquiry from a search for the "source" of income to a simple showing of jurisdictional "tax liability" in another state.*[6] [Emphasis added]

Thus l.c. 648[1, 2]:

[T]he legislative taxing scheme in this state has been broadened since the days

state in the following manner: *The net income from all sources* shall be determined as now or hereafter may be provided, excluding therefrom the figures for the operation of any bridge connecting this state with another state. The amount of sales which are transactions wholly in this state shall be added to one-half of the amount of sales which are transactions partly within this state and partly without this state, and the amount thus obtained shall be divided by the total sales or in cases where sales do not express the volume of business, the amount of business transacted wholly in this state shall be added to one-half of the amount of business transacted partly in this state and partly outside this state and the amount thus obtained shall be divided by the total amount of business transacted, and the net income shall be multiplied by the fraction thus obtained, to determine the proportion of income to be used to arrive at the amount of tax .... [Emphasis added]

To the extent relevant § 143.451 [effective 1973] provides:

1. Missouri taxable income of a corporation shall include all income derived from sources within this state.

2. A corporation described in subdivision (1) of subsection 1 of section 143.441 shall include in its Missouri taxable income all income from sources within this state, including that from the transaction of business in this state and that from the transaction of business partly done in this state and partly done in another state or states. However:

. (1) Where income results from a transaction partially in this state and partially in another state or states, and income and deductions of the portion in the state cannot be segregated, then such portions of income and deductions shall be allocated in this state and other state

or states as will distribute to this state a portion based upon the portion of the transaction in this state and the portion in such other state or states.

(2) The taxpayer may elect to compute the portion of income from all sources in this state in the following manner:

(a) The income *from all sources shall be determined* as *provided*, excluding therefrom figures for the operation of any bridge connecting this state with another state.

(b) The amount of sales which are transactions wholly in this state shall be added to one-half of the amount of sales which are transactions partly within this state and partly without this state, and the amount thus obtained shall be divided by the total sales or in cases where sales do not express the volume of business, the amount of business transacted wholly in this state shall be added to one-half of the amount of business transacted partly in this state and partly outside this state and the amount thus obtained shall be divided by the total amount of business transacted, and the net income shall be multiplied by the fraction thus obtained, to determine the proportion of income to be used to arrive at the amount of Missouri taxable income ....

6. The Multistate Tax Compact [§ 32.200, Article IV] provides:

2. Any taxpayer having income from business activity which is taxable both within and without this state ... shall allocate and apportion his net income as provided in this article.

3. For purposes of allocation and apportionment of income under this article, a taxpayer is taxable in another state if

(1) in that state he is subject to a net income tax, a franchise tax measured by net income,

of *Green* [the year 1955 *A. P. Green Fire Brick* case], and now additional law exists in this area which must be construed as well. The Multistate Tax Compact, adopted in Missouri in 1967 and set out in Chapter 32, is the extra factor which must enter into our consideration of this [allocation] case.

The enactment of the Multistate Tax Compact, by express declaration [Article I, § 2], subserves the purposes to "[f]acilitate proper determination of state and local tax liability of multistate taxpayers [and to] avoid duplicative taxation." *Goldberg, Director of Revenue v. State Tax Commission and A. P. Green Refractories Company*, 618 S.W.2d 635 (Mo.1981). The provisions of § 143.451 continue valid as one elective method of the law [§ 32.200 of the Compact included] allows for the *allocation* of multistate income, but questions as to *apportionment*[7] of such income are determined *exclusively* by reference to the terms of Compact. That standard is: whether the income from multistate business activity, *irrespective of source, is taxable* both within and without the state. *M. V. Marine Co. v.*

State Tax Commission of Missouri, 606 S.W.2d 644, 649[6] (Mo. banc 1980). The peremptory rationale of *M. V. Marine Co.* notwithstanding—and that the tax statutes are integral for the purpose of multistate allocation of the multistate income and that the Compact is preemptive as to the apportionment of the multistate income—the litigants continue to insist that the *source* of the income rather than the *jurisdiction of the other state to tax* the income—determines the liability to Missouri for the foreign royalties.[8]

This analysis dispels the contention that on principles of collateral estoppel the year 1955 *A. P. Green Fire Brick* decision prevents relitigation of the issue whether Missouri may tax successor A. P. Green Refractories Company on royalty income from a source wholly outside this state. If we assume what the record does not palpably show—that the year 1955 A. P. Green Fire Brick adjudication involved not only royalty income from wholly outside the state but also an allocation and apportionment of multistate income by the single factor formula—that judgment, neverthe-

---

a franchise tax for the privilege of doing business, or a corporate stock tax; or

(2) that state has jurisdiction to subject the taxpayer to a net income regardless of whether, in fact, the state does or does not.

7. The terms *allocation* and *apportionment* are used without definition in the Multistate Tax Compact. Article IV of the Compact, which uses those terms, is merely a rescript of the Uniform Division of Income For Tax Purposes Act [UDITPA]. As employed in UDITPA, *allocation* refers to "the attribution of a particular type of income, receipt, property or the like to a designated state" whereas *apportionment* refers to "the division of the tax base by formula." Hellerstein, *Construing the Uniform Division of Income for Tax Purposes Act*, 45 U. of Chicago L.R. 768, 769, n.9 (1978); Lynn, *Formula Apportionment of Corporate Income For State Tax Purposes: Natura Non Facit Saltum*, 18 Ohio St.L.J. 84, 85, n.8 (1957).

8. The administrative decision and the circuit court judgment on review ran their course and the briefs on appeal were filed in this court before *M. V. Marine Co.* [l.c. 649[6]] decided that the revenue statute § 143.451 [and former § 143.040 from year 1967 to repeal] and the Multistate Tax Compact are *in pari materia* for purposes of construction of the allocation pro-

visions of these laws but that the apportionment of multistate income for the purpose of income tax is determined by reference to the Compact alone. The litigants, each by separate memorandum amendment to the briefs, cited *M. V. Marine Co.* to this court, not as "relevant to the substantive issue of statutory interpretation," however, but only as "pertinent to the preliminary procedural issue of collateral estoppel."

That assessment becomes all the more anomalous when we consider that other claims for additional taxes by Missouri—also for years 1971, 1972 and 1973—on multistate income by A. P. Green Exports Company [an owned corporation of A. P. Refractories Company] were tried to the State Tax Commission concurrently with the claims we now review under the provisions of the Multistate Tax Compact. The taxpayer there [A. P. Green Refractories, successor to A. P. Green Export Company, since dissolved] contended for exclusion from Missouri taxation on the income derived from Puerto Rico because under the Multistate Tax Compact Puerto Rico had jurisdiction to tax that income. The decision on appeal is reported in: *Goldberg, Director of Revenue v. State Tax Commission*, supra, 618 S.W.2d 635 (Mo. 1981).

less, does not estop Missouri from a new litigation of the tax liability on such income for years 1971, 1972 and 1973. The tax liability for each year constitutes a separate cause of action. *Defenders' Townhouse, Inc. v. Kansas City*, 441 S.W.2d 365, 368[1–3] (Mo.1969). In a tax case, as in others, a judgment in a prior suit between the same parties or privies operates as an estoppel as to those matters actually decided and necessary to the rendition of judgment. *Kansas City v. Graybar Electric Company, Inc.*, 485 S.W.2d 38, 43[4] (Mo. banc 1972). The principle of collateral estoppel as applied to tax cases, however, may not be used to vest a right in a rule of law since become obsolete [*Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), l.c. 599–600, 68 S.Ct. 720]:

> [W]here two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and *where the controlling* facts and *applicable legal rules remain unchanged . . . If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation . . .* And where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive. *As* [in the case *where*] *a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable.* [Emphasis added]

The year 1955 *Green Fire Brick* case was decided on agreed facts: it presented a question of law. The *source* doctrine that case pronounced rested on then § 143.040. The enactment of the Multistate Tax Compact in year 1967 intervened to work a change in the determinative law on the question of the apportionment of income from multistate business activity. *M. V. Marine Co.* has judicially declared the *jurisdiction to tax* criterion of the Compact, and

not the *source* rationale of either former § 143.040 or successor § 143.451, determines the apportionment of multistate income for purpose of taxation. The contention that collateral estoppel bars the claims is denied. *ITT Canteen Corporation v. Spradling*, 526 S.W.2d 11, 15[2] (Mo.1975).

■ We determine also that the appeal presents questions of application of the revenue laws as already construed by the Missouri Supreme Court in *M. V. Marine Co.* and thus is properly lodged with our jurisdiction. Mo.Const. Art. V, § 3 (1945) as amended.

The litigants presented the claims on appeal on an agreed statement of facts. They posed the issue before the administrative tribunal—as now on appeal—as one of law: whether a Missouri taxpayer must include income from sources wholly outside this state under the allocation and apportionment of multistate income provisions of former § 143.040 and present § 143.451. We have concluded that the question as posed misdirects inquiry because the supervention of the Multistate Tax Compact recasts the issue from *source* to the jurisdiction of the other state to levy a tax on the net income of the activity of the taxpayer. The evidence adduced at the administrative hearing as well as the agreed statement of facts are compatible on the issue contended but are not sufficient for a conclusive apportionment [and taxability] to Missouri under the Multistate Tax Compact.

A taxpayer who has *income from business activity* which is taxable both within and without this state [with exceptions not relevant] must allocate and apportion that net income as provided in the Multistate Tax Compact. [Article IV, § 2]. For the purposes of allocation and apportionment, a taxpayer is taxable in another state if that state taxes the income *or has jurisdiction* to levy the tax. [Article IV, § 3] Thus, the Multistate Tax Compact operates on *business income*. The Compact defines *business income* as "income arising from transactions and activity in the regular course of the taxpayer's trade or business and *in-*

cludes income from tangible and *intangible property*[9] if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." [Article IV, § 1(1)] Where the multistate patent and copyright royalties are *nonbusiness income*[10]—that is, income not "arising from transactions and activity in the regular course of the taxpayer's trade or business," they are allocable to Missouri [Article IV, § 8(1)]:

    (a) if and to the extent that the patent or copyright is utilized by the payer in this state [Missouri]; or[11]

    (b) if and to the extent that the patent copyright is utilized by the payer in a state in which the taxpayer is not taxable *and the taxpayer's commercial domicile is in this state.* [Emphasis added]

Thus, the Compact apportions to Missouri multistate *business income* from trademarks [and the such] not taxed by the other state or subject to the *jurisdiction* of the other state to tax. [Article IV, § 3] The Compact apportions to Missouri multistate *nonbusiness income*—if Missouri is the *commercial domicile* of the taxpayer—to the extent that the trademarks are used in a state where the taxpayer is not taxable. [Article IV, § 8] These provisions express the pervasive design of the Compact to replace the welter of disparate state provisions with a uniform rule of allocation and apportionment to the end that "not more that one hundred percent of the income of a

... taxpayer should be subject to the combined tax attentions of the several states." Lynn, *Formula Apportionment of Corporate Income for State Tax Purposes*, 18 Ohio St.L.J. 84, 87 (1957); Pierce, The Uniform Division of Income for State Tax Purposes, 35 Taxes 747, 748 (1957); *M. V. Marine Co. v. State Tax Commission*, supra, 606 S.W.2d 644, 650[6] (Mo. banc 1980).

    ■ The authoritative adjudication of the issue on appeal, as we note, requires the application of the Multistate Tax Compact as construed by the Supreme Court en banc in *M. V. Marine Co., in pari materia* with former § 143.040 and successor § 143.451, for apportionment of the royalty income to Missouri for taxation. In the context of the Compact that apportionment depends upon whether the multistate income derives from business activity or nonbusiness activity, and in either event, whether the other state taxes or has jurisdiction to tax the royalty income Missouri seeks to tax. If the royalties represent nonbusiness activity income then the apportionment—in this case, where the royalty income derives from trademark use wholly outside Missouri—depends also upon whether Missouri is the *commercial domicile* of the taxpayer.

    These are all elements of proof not attempted, as such, before the administrative agency simply because the terms of the Compact were not addressed for the adjudication. Nor do the agreed facts supply the lack. The stipulation does agree that the royalties were for the use by foreign corporations of trademarks, trade names,

---

**9.** It is not doubted that the royalties in contention, from trade names, trademarks and processes of manufacture—as the parties stipulate—are income from *intangible property* within the Compact definition of *business income*. *A. P. Green Fire Brick Company v. Missouri State Tax Commission*, 277 S.W.2d 544, 547[5] (Mo.1955).

**10.** The allocation of nonbusiness income is as provided in Article IV, § 4 of the Compact:

    Rents and royalties from real or tangible personal property, capital gains, interest, dividends *or patent or copyright royalties, to the extent they constitute nonbusiness income*, shall be allocated as provided in paragraphs 5 through 8 of this article.

See, also, the critique of the allocation of the multistate nonbusiness income for purposes of income tax in Lynn, *The Uniform Division of Income for Tax Purposes Act*, 19 Ohio St.L.J. 41, 44 (1955).

**11.** Subsection (a) is not relevant to the issue in contention. The evidence shows conclusively, and the parties stipulate the fact, that the A. P. Green Refractories Company trade names, etc. were not used by any of the corporate licensees in Missouri.

    Nor can there be question that Article IV, § 8 use of *patent and copyright royalties* encompasses trademark and trade name royalties. See: Wilkie, Uniform Division of Income for Tax Purposes, 37 Taxes 65, 71 (January 1959).

processes of manufacture owned by A. P. Green Refractories Company. The stipulation also agrees that the two contracts in evidence—one between A. P. Green Refractories Company and Vereeniging Refractories Limited [a Republic of South Africa corporation] and the other with Refractories [a Republic of Mexico corporation]—are exemplars of the agreements with the other foreign corporations from which royalty income derives to A. P. Green. These contracts show far more than merely the sale or license of trademarks and processes of manufacture: they obligate A. P. Green to provide research, technical development, consultant and laboratory personnel, to conduct tests and experiments to ensure the successful manufacture of products by the foreign contractee, and even—in the case of the Mexican corporation—to furnish plans for the construction of a plant.

These agreed exhibit recitations could be understood to sustain that the A. P. Green royalty income under these contracts derives from "activity in the regular course of the taxpayer's trade or business" so as to constitute *business income* within the Compact definition. [Article IV, § 1(1)] That determination, however, no matter how evident the proof, remains for the administrative tribunal in the first instance. So also does the question of whether the foreign states tax or have jurisdiction to tax that income become an initial administrative determination. *M. V. Marine Co.*, supra, l.c. 650[7]. The proof of *commercial domicile*, also impinges—at least contingently—on the determination of apportionment under the Compact. The agreed statement of the case stipulates:

> A. P. Green Refractories Company is a Delaware corporation qualified to do business in Missouri. *Its principal office is in* Mexico, *Missouri.* It is a successor to the former A. P. Green Fire Brick Company, a Missouri Corporation. [Emphasis added]

The *commercial domicile* under the Compact means "the *principal place* from which the trade or business of the taxpayer is directed or managed." [Emphasis added] [Article IV, § 1(2)]. That stipulation was designed for litigation under § 143.040 and § 143.451, and not under the Compact. That question also is properly for initial determination by the administrative tribunal, on evidence or stipulation.

■ This appeal poses no constitutional question, only the application of revenue laws already authoritatively construed. The Multistate Tax Compact assumes that a state [in this case, Missouri] has jurisdiction to levy the particular tax. We remand the claims to the State Tax Commission for redetermination under the provisions of the Compact *in pari materia* with the other revenue laws. Any question of constitutional validity of the taxation by Missouri of the described royalty income under the Compact or of the further construction of the provisions of that enactment are properly incidents of that proceeding, and not of this review.

The judgment of the circuit court is reversed with directions for remand to the State Tax Commission for redetermination of the tax claims for years 1971, 1972 and 1973.

All concur.