**ASARCO, INCORPORATED,**
**Plaintiff–Respondent,**

v.

**Paul S. McNEILL, Jr., Director of Revenue, Defendant–Appellant,**

and

**Missouri Department of Revenue, Defendant.**

**No. 15379.**

Missouri Court of Appeals,
Southern District,
Division One.

March 29, 1988.

Motion for Rehearing or transfer to Supreme Court Denied
April 18, 1988.

Application to Transfer Denied
June 14, 1988.

William L. Webster, Atty. Gen., Melodie A. Powell, Asst. Atty. Gen., Jefferson City, for defendant-appellant.

J.B. Schnapp, John W. Reid, II, Schnapp, Graham, Reid & Fulton, Fredericktown, for plaintiff-respondent.

CROW, Chief Judge.

To comprehend the primary issue presented by this appeal, one must know the history of the dispute.

On June 7, 1977, the Circuit Court of Iron County entered judgment in a suit wherein ASARCO, Incorporated, and certain other companies were plaintiffs, and the Missouri Director of Revenue ("the Director") and Missouri Department of Revenue ("the Department") were defendants. The suit involved § 144.030.3(1), RSMo 1969, which exempted from the Missouri sales and use tax those "[m]aterials ... which when used in manufacturing, processing, compounding, mining, producing or fabricating become a component part or ingredient of the new personal property resulting from such manufacturing, processing, compounding, mining, producing or fabricating and which new personal property is intended to be sold ultimately for final use or consumption."

In the 1977 action it was stipulated that ASARCO, henceforth referred to as "plaintiff," purchased from its suppliers a number of materials (each of which was specifically named), and used such materials in its mining, milling, smelting and refining processes. It was further stipulated that such materials "are used for the purpose of separating the metals from the by-products of said operations and which materials comingle [sic] with the metals and the by-products to form the new personal properties produced by said operations and which are intended to be sold ultimately for final use or consumption."

In the 1977 judgment, the circuit court found that a controversy existed as to the validity of regulation 030–23 by which the Department had attempted to impose restrictions on the availability of the exemption in § 144.030.3(1) "in excess of those restrictions provided for in said statute." The judgment declared, among other things:

"2. The materials set forth in ... the stipulation are materials which become 'component parts or ingredients' of the new personal property produced by those mining, smelting and refining operations within the meaning of Section 144.030.3 (1) ..., and the purchase of those materials is thus exempt from taxation under Chapter 144, RSMo. 1969.

3. Regulation 030–23 (or 10–3.292) as promulgated by Defendants is invalid in

that it attempts to impose restrictions on the availability of the exemption set out in Chapter 144 in excess of those restrictions provided for in said statute."

There was no appeal from the 1977 judgment, nor was there any effort by the Director or the Department from 1978 through 1983 to assess sales taxes or use taxes on the purchase by plaintiff of any of the materials that became component parts or ingredients of its products through its mining, smelting and refining operations.

On July 8, 1987, plaintiff filed in the Circuit Court of Iron County a "Petition for Further Relief after Declaratory Judgment," averring that the 1977 judgment established that the "reagents" identified in the stipulation referred to in that decree were not subject to sales tax and use tax under chapter 144, RSMo 1969, as amended. The petition further alleged that the Director and the Department had conducted a "sales tax audit" for the years 1984 through 1987, and had indicated that the Department would "assess sales and use taxes, interest and penalties, on reagent purchases." The proposed taxes, pled the petition, amount to $12,676.69, and are on "the same identical reagents as are described in" the 1977 judgment. Continuing, the petition averred that the pertinent statutes and regulations remained unchanged since the 1977 judgment, and that plaintiff's use of the reagents during the years 1984 through 1987 was "precisely the same as the uses being made" at the time of the 1977 judgment.

The petition complained that (a) unless prohibited by the circuit court, the Director and the Department would assess the proposed taxes, and (b) plaintiff, by reason of the threatened assessment, had incurred attorney fees and court costs, which the

Director and the Department should pay. The petition prayed for an order commanding the Director and the Department to show cause why plaintiff should not be granted relief per § 527.080, RSMo 1986,[1] and "Missouri Supreme Court Rule 87.11."[2]

The circuit court immediately issued to the Director and the Department an "Order to Show Cause," commanding them to appear on August 5, 1987, and show cause "why an Order should not be made prohibiting and enjoining the Defendants from assessing sales and use taxes, interest and penalties, against the Plaintiff on reagents purchased and used by the Plaintiff in the years 1984, 1985, 1986 and 1987, and ordering the Defendants to pay to the Plaintiff its attorney fees and court costs." The show cause order was served on the Director and the Department July 10, 1987.

On July 20, 1987, plaintiff filed a second "Petition for Further Relief after Declaratory Judgment" in the Circuit Court of Iron County. That petition stated that the earlier petition of July 8, 1987, had concerned the impending assessment of sales and use taxes on reagents utilized at plaintiff's "West Fork operation." The July 20 petition averred that the Director and the Department, on July 3, 1987, had assessed sales and use taxes on reagents utilized by plaintiff at its smelter operation at Glover, Missouri, during the period from 1984 through November 30, 1986. The assessment, according to the petition, was $218,598.12, plus interest of $48,117.37 and penalties of $11,671.89, making a total of $278,387.38.

The petition further alleged that the reagents were used for the purpose of separating metals from by-products of the raw

---

1. Section 527.080, RSMo 1986, provides: "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith."

2. It appears from plaintiff's brief that the reference to Rule 87.11 in the petition is a typographical error, and that the rule to which plaintiff intended to refer was Rule 87.10, Missouri Rules of Civil Procedure (18th ed. 1987). That rule is identical to § 527.080, RSMo 1986, footnote 1, *supra.*

material, that the reagents commingle with the metals and the by-products to help form the new properties produced by plaintiff's smelting and refining operation, and that such properties are ultimately sold for final use or consumption. Furthermore, pled the petition, the statutes regarding sales and use taxes and exemptions had not been amended or changed since the 1977 judgment, and plaintiff's use of the reagents at its Glover smelter during the years 1984, 1985 and 1986 was the same as when the 1977 judgment was entered.

Consequently, pled the petition, the Director and the Department should be prohibited and enjoined from collecting sales and use taxes on such reagents, and should be ordered to withdraw the assessment of July 3, 1987. The petition prayed for an order commanding the Director and Department to show cause why the circuit court should not grant the requested relief. Unlike the petition of July 8, 1987, the petition of July 20 did not pray that the Director and the Department pay plaintiff's attorney fees and court costs.

The circuit court immediately issued to the Director and the Department an "Order to Show Cause," commanding them to appear on August 5, 1987, and show cause why the relief prayed for by plaintiff in the July 20 petition should not be granted. The show cause order was served on the Director and the Department July 21, 1987.

On July 30, 1987, the Director and the Department filed in the circuit court a motion to dismiss plaintiff's "action," asserting that the circuit court "lacks subject matter jurisdiction." In written suggestions accompanying the motion, the Director and the Department argued that by reason of S.B. 661, Laws 1978, pp. 441–61, the Administrative Hearing Commission had acquired exclusive jurisdiction to review final decisions of the Director under chapter 144. The suggestions pointed out that prior to the 1978 act, review of a final decision of the Director under chapter 144

had been governed by § 144.261, RSMo 1969, which provided:

"Any final decision, finding, order or ruling of the director, under the provisions of this chapter is subject to judicial review in the manner provided by chapter 536, RSMo."

The suggestions explained that the 1978 act repealed § 144.261, RSMo 1969 (above), replacing it with a new statute, also numbered 144.261. The new § 144.261 provided:

"Final decisions of the director under the provisions of this chapter are reviewable by the filing of a petition with the administrative hearing commission in the manner provided in section 161.273, RSMo...."

Section 161.273, referred to in the new version of § 144.261 (above), was an entirely new statute enacted in S.B. 661, Laws 1978. It (§ 161.273) provided, in pertinent part:

"... any person or entity shall have the right to appeal to the administrative hearing commission from any finding, order, decision, assessment or additional assessment made by the director of revenue. Any person or entity who is a party to such a dispute shall be entitled to a hearing before the administrative hearing commission by the filing of a petition with the administrative hearing commission within thirty days after the mailing or delivery of a decision of the director of revenue.... Decisions of the administrative hearing commission under this section shall be binding subject to appeal by either party...." [3]

S.B. 661, Laws 1978, contained another entirely new statute, numbered 161.337. It provided, in pertinent part:

"Final decisions of the administrative hearing commission in cases arising under the provisions of ... section 161.273, RSMo, shall be subject to review pursuant to a petition for review to be filed in the court of appeals in the district in which the hearing, or any part thereof, is

**3.** Section 161.273 was amended by H.B. 129, Laws 1981, pp. 308–09, and was renumbered as § 621.050 in RSMo Cum.Supp.1984. It was amended again by C.C.S.H.C.S.S.C.S.S.B. 426, Laws 1986, pp. 746–64, and currently appears as § 621.050, RSMo 1986.

held or, where constitutionally required or ordered by transfer, to the supreme court.... Review under this section shall be exclusive, and decisions of the administrative hearing commission reviewable under this section shall not be reviewable in any other proceeding, and no other official or court shall have power to review any such decision by an action in the nature of mandamus or otherwise except pursuant to the provisions of this section...." [4]

The Director and the Department proclaimed in their suggestions to the circuit court that they were not barred by the 1977 judgment from assessing sales and use taxes against plaintiff for 1984 through 1986. Relying on §§ 144.261 and 621.050, [5] RSMo 1986, and citing *State ex rel. Goldberg v. Darnold,* 604 S.W.2d 826 (Mo. App.1980)—of which more later—the Director and the Department, in their suggestions, asserted:

"[Plaintiff] has the burden to show that its operations are exactly the same as they were in 1977 and that the 1977 order should be given res judicata effect. However, the plaintiff must show that to the Administrative Hearing Commission, not to this court by way of a petition for further relief."

On July 31, 1987, the Director and the Department assessed sales and use taxes on reagents utilized by plaintiff at its West Fork operation during the years 1984 through 1987. The taxes totaled $12,-676.69; the assessment also included interest and penalties.

On August 5, 1987, plaintiff appeared in the circuit court by its attorneys and two of its officials. No one appeared for the Director or the Department. [6] Plaintiff presented evidence supporting the allegations of both of its petitions.

The circuit court thereupon entered two orders, one pertaining to plaintiff's West Fork operation and one pertaining to plaintiff's Glover smelter.

In its order regarding the West Fork operation, the circuit court found that (a) the statutes on which the court based its 1977 judgment, declaring the reagents used by plaintiff exempt from sales and use taxes, remained unchanged except for renumbering, (b) the 1977 judgment was not appealed, and thereby became a final and binding judgment on all parties to the action, (c) the court continued to have jurisdiction to grant further relief pursuant to § 527.080, RSMo 1986, [7] and Rule 87.10, [8] and (d) the Director and the Department had neither alleged nor offered evidence that the use of reagents by plaintiff in its mining, milling, refining and smelting process at West Fork had changed since the 1977 judgment.

The order then stated:

"The Court finds Defendants have not shown good cause why the Court should not enforce its 1977 Declaratory Judgment which found the ... Department of Revenue's rule (12 CSR 10–3.292) that attempts to tax reagents used by [plaintiff] in its West Fork operations ... violates Missouri Statutes ... and further found that the following named reagents, to-wit: [here the order lists over 20 substances by name] in [its] mining, milling, smelting and refining processes, were exempt from Missouri Sales and Use Taxes under ... Chapter 144 Revised Statutes of Missouri.

WHEREFORE, the Court does hereby overrule the Defendants' Motion to Dismiss and does further enjoin and prohibit the ... Director ... and the ... Department ... from assessing and collecting Missouri Sales and Use Taxes, interest and penalties, on the reagents described

---

**4.** Section 161.337 was renumbered as § 621.189 in RSMo Cum.Supp.1984. It appears under that number in RSMo 1986.

**5.** Footnote 3, *supra.*

**6.** A letter from the attorney for the Director and the Department to the circuit court dated July 29, 1987, stated, in pertinent part:

"I will not be able to attend the August 5th court date.... it would be satisfactory with me if the case was submitted ... on the pleadings and the motion to dismiss...."

**7.** Footnote 1, *supra.*

**8.** Footnote 2, *supra.*

in this Court's ... 1977 [judgment], which [plaintiff] uses in its West Fork operation ... and on which said reagents the Defendants have proposed to assess Sales and Use Taxes, plus interest and penalties, ... covering the period ... from 1984 to the present time.

The Court furthers [sic] orders court costs taxed against the Defendants."

▉ The circuit court's order regarding plaintiff's smelter at Glover was, insofar as pertinent to the issues before us, essentially a repetition of the order regarding West Fork.

The Director appeals,[9] briefing two assignments of error, the first of which presents the paramount issue. The assignment states:

"The ... circuit court erred in granting further relief after declaratory judgment and in enjoining the Director ... from assessing Missouri sales and use tax because the circuit court did not have subject matter jurisdiction over the case in that proper jurisdiction lies in the Administrative Hearing Commission pursuant to chapter 621, RSMo."

The Director begins his argument by stating that plaintiff has taken the position that the Director "is collaterally estopped from assessing tax in this case and that the declaratory judgment issued in 1977 is res judicata as to the assessment made in 1987." Citing *ITT Canteen Corp. v. Spradling*, 526 S.W.2d 11 (Mo.1975), and *A.P. Green Refractories Co. v. State Tax Commission*, 621 S.W.2d 340 (Mo.App.1981), the Director maintains that in tax cases, the principles of collateral estoppel and res judicata do not apply when there has been a change in the applicable law.

▉ In considering the Director's contentions, it is helpful to note the difference between res judicata and collateral estoppel. Traditionally, res judicata (defined as *claim* preclusion) precludes the same parties or their privies from relitigating the same *cause of action*. *Nelson v. Missouri Division of Family Services*, 688 S.W.2d 28, 30[1] (Mo.App.1985). This is to be distinguished from collateral estoppel (defined as *issue* preclusion) which precludes the same parties or those in privity from relitigating *issues* which have been previously litigated. *Id.* at 30[2].

The distinction between res judicata and collateral estoppel in tax cases is articulated in *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), where it is said:

"Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is *res judicata* as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit. Collateral estoppel operates, in other words, to relieve the government and the taxpayer of 'redundant litigation of the identical question of the statute's application to the taxpayer's status.'" 333 U.S. at 598–99, 68 S.Ct. at 719–20[6].

With the above distinction in mind, we examine *ITT Canteen*, 526 S.W.2d 11, cited by the Director, to see how the principles were treated there. In that case, the Department notified a retailer (Canteen) of a deficiency in its sales tax payments for 1968–70. The stated basis of the deficiency was that Canteen should have collected sales tax on amounts paid to it pursuant to

---

9. The Department, a constitutionally established agency of the executive department (Mo. Const. art. IV, § 12), was, as we have seen, a defendant in the circuit court along with the Director. The notice of appeal names the Director, alone, as appellant. In *Laiben v. State*, 684 S.W.2d 943 (Mo.App.1985), a proceeding for review of the revocation of a motor vehicle operator's license, it was held that the Director in his official capacity as a state officer had the ultimate duty and responsibility for the issuance, suspension and revocation of operators' licenses; accordingly, it was the Director in his official capacity, and not the Department, who was a necessary party to that proceeding. *Id.* at 945[2].

the Missouri cigarette tax law by purchasers of cigarettes. Canteen paid the assessment under protest, exhausted its administrative remedies without success, and petitioned the circuit court for judicial review. The circuit court held that the cigarette tax was not a part of the price of cigarettes upon which the sales tax was imposed, that the cigarette tax was a levy on the consumer or user, and that in collecting it the retailer acted merely as agent for the state. Consequently, the circuit court ordered that the amount paid by Canteen under protest be returned to it, and that the amounts of the cigarette taxes be deducted thereafter in computing sales taxes due by Canteen. The Department appealed, but ultimately dismissed its appeal. A few years later, the Department promulgated a regulation requiring payment of sales tax on amounts received by retailers from cigarette purchasers in payment of the Missouri cigarette tax. Canteen thereupon sought a declaratory judgment that the regulation was void. Up to that time there had been no change in either the sales tax statutes or the cigarette tax statutes since the earlier judgment. While the declaratory judgment suit was pending, however, the General Assembly passed a new cigarette tax act. The circuit court held in the declaratory judgment suit that the earlier judgment was "binding," as the legal issue was identical. Alternately, the circuit court held that Canteen was entitled to judgment on the merits, as under both the old and the new cigarette tax acts the cigarette tax was not a part of the sale price.

On appeal, the Supreme Court of Missouri noted that in addition to the new cigarette tax act, it had decided two tax cases in 1973. The opinion said:

"Defendants contend strenuously that these developments effected a change in the applicable law. While we do not, at this point, rule that they did or did not, we feel that they do present an arguable question of law which we must decide. Hence, we determine that this case should not be decided on either *res adjudicata* or collateral estoppel and, as a practical matter, there should be a determination here on the merits in any event. To do otherwise would only invite future litigation." *Id.* at 15.

The Supreme Court then determined that under the earlier cigarette tax act, the cigarette tax was not part of the sale price of cigarettes, thus sales tax could not be assessed on cigarette taxes collected by the retailer as agent for the state. *Id.* at 17–18[7, 8]. The Supreme Court reached the same result under the new cigarette tax act. *Id.* at 20[9]. The Supreme Court rejected the circuit court's holding that the earlier judgment was res judicata or binding on the Department as a collateral estoppel. *Id.* at 20. The Supreme Court did, however, affirm the circuit court's holding that the regulation requiring payment of sales tax on amounts received by retailers from cigarette purchasers in payment of the cigarette tax was void. *Id.*

In *A.P. Green Refractories*, 621 S.W.2d 340, also cited by the Director, a corporation maintained that royalties paid to it by foreign companies for use of the corporation's trademarks, trade names and manufacturing processes were not subject to Missouri income tax. The State Tax Commission held otherwise. On appeal, the corporation contended that a 1955 decision of the Supreme Court of Missouri in a suit between the corporation's predecessor and the Commission collaterally estopped the Commission from contending that the corporation's royalty income from a foreign source was subject to taxation. The appellate court pointed out that the enactment of the Multistate Tax Compact in 1967 added a "dimension" to the tax laws not extant at the time of the 1955 decision. *Id.* at 343. The opinion added that the Compact "intervened to work a change in the determinative law on the question of the apportionment of income from multistate business activity." *Id.* at 345. Hence, the appellate court rejected the corporation's contention that collateral estoppel applied. *Id.* The court quoted with approval the following passage from *Sunnen*, 333 U.S. at 599–600, 68 S.Ct. at 720[8, 9]:

"[Collateral estoppel] must be confined to situations where the matter raised in

the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation. And where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive.... a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable." *Id.* (citations and footnote omitted), quoted in *A.P. Green Refractories*, 621 S.W.2d at 345.

■ We learn from *Sunnen, ITT Canteen,* and *A.P. Green Refractories* that in order for collateral estoppel to apply, the issue in the later case must be identical in all respects with that decided in the earlier case, and the controlling facts and applicable legal rules must remain unchanged.. A judicial declaration intervening between the earlier case and the later case can, of course, change the applicable legal rules.

Accordingly, it is essential in the instant case to ascertain whether there has been, since the 1977 judgment, any change in the controlling facts, pertinent statutes, or applicable regulations. It is likewise necessary to see whether an intervening judicial declaration has wrought a change in the law.

The statute on which the 1977 judgment was based—§ 144.030.3(1), RSMo 1969—now appears as § 144.030.2(2), RSMo 1986. Except for renumbering, the two sections are identical; the Director does not argue otherwise.

The regulation declared invalid by the 1977 judgment—12 CSR 10–3.292 (also identified in said judgment by its earlier number, 030–23)—has, in its substantive provisions, likewise remained unchanged.[10] Moreover, the Director's brief states:

"The Director has assessed the tax [in dispute here] pursuant to statute and has applied that statute to a specific set of facts.... The Director of Revenue has assessed tax pursuant to statute, not a rule or regulation."

It thus appears that the Director relies on § 144.030.2(2), RSMo 1986, as authority for the assessments in the instant case, not on the regulation declared invalid by the 1977 judgment, or on any other regulation.

■ As to whether the controlling facts remain unchanged since the 1977 judgment, plaintiff alleged, as we have seen, that the reagents it uses today are the same as those it was using at the time of the 1977 judgment, and that the manner in which such reagents are used today remains unchanged since 1977. At the August 5, 1987, hearing in the circuit court, plaintiff presented substantial evidence to support those allegations, and the circuit court, in the orders from which the Director appeals, found such allegations were true. The Director does not, in this appeal, attack those findings. Furthermore, nowhere in its motion to dismiss or suggestions did the Director argue to the circuit court that there had been any change in the controlling facts since the 1977 judgment. An appellate court will not, on review, convict a lower court of error on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 36[12] (Mo. banc 1982), *appeal dismissed,* 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983). Consequently, so far as the instant appeal is concerned, the controlling facts remain unchanged since the 1977 judgment.

It is thus evident that apart from the changes in the review procedure implemented by S.B. 661, Laws 1978 (to be discussed later), the only possible variance between the circumstances that existed at the time of the 1977 judgment and those existing at the time of the 1987 orders

10.  12 CSR 10–3.292 was amended effective January 1, 1981. The only difference between the earlier version and the 1981 version is that the earlier version had paragraphs numbered "(3)" and "(4)," setting forth examples of materials that were not ingredients or component parts of a product. Those paragraphs do not appear in the 1981 version.

would be a change in the law brought about by an intervening court decision.

On that subject, the only appellate court decision cited by the Director in which § 144.030.2(2), RSMo 1986, was in dispute is *Ceramo Co., Inc. v. Goldberg*, 650 S.W. 2d 303 (Mo.App.1983). There, a manufacturer of clay pots mixed clay and diesel oil in the manufacturing process, then baked the mixture until hard. The purpose of the oil was to give the product a smooth surface. The oil was dissipated during the baking process, and remained in the final product in very minute quantities, if at all. The Department ruled that the oil was not exempt from Missouri sales tax under § 144.030.3(1), RSMo 1978. On appeal from a circuit court judgment upholding the assessment, the appellate court reversed, concluding that the fact that the oil was consumed in the manufacturing process did not make the oil subject to taxation, as the oil was initially a component part or ingredient of the final product and was necessary to produce a high quality product. *Id.* at 304–05[4].

Nothing in *Ceramo* suggests that § 144.030.3(1), RSMo 1978—now § 144.030.2(2), RSMo 1986—has, since the 1977 judgment in the instant case, been interpreted or applied in a manner inconsistent with the 1977 judgment. On the contrary, *Ceramo* reinforces the 1977 judgment.

■ The Director maintains, however, that "since 1977, the law regarding the component part or ingredient exemption [of § 144.030.2(2), RSMo 1986] has not been settled." In support of that proclamation, the Director refers us to a 56–page document appended to his brief. The document purports to be a 1984 decision of a Commissioner of the Administrative Hearing Commission in a case involving § 144.030.2(2), RSMo Cum.Supp.1983. The document, so far as we can determine, was not presented by the Director to the circuit court, and it is not included in the record on appeal. Appellate review cannot be bottomed on documents not offered in evidence nor included in the appeal transcript. *Davis v. Long*, 521 S.W.2d 7, 8–9[4] (Mo.App.1975).

The Director's brief also declares that the Administrative Hearing Commission currently has before it for decision two cases "involving the component part or ingredient exemption and, more specifically, reagents." Nothing in the record on appeal indicates that the Director made any showing of this in the circuit court. Recitals in an appellate brief do not rise to the dignity of proof and thus are insufficient to supply essential matters for review. *Davis*, 521 S.W.2d at 8–9[4]. We therefore dismiss the Director's contention that "an arguable question of law regarding § 144.030.2(2), RSMo 1986," exists by reason of the alleged 1984 decision of the Administrative Hearing Commission and the cases allegedly pending before it.

The result is that, on the record before us, the only legal or factual change that occurred during the interval between the 1977 judgment and the 1987 orders is the change in the review procedure made by S.B. 661, Laws 1978, pp. 441–61, outlined earlier. The Director argues that by reason thereof:

"The Administrative Hearing Commission has exclusive jurisdiction over review of final assessments of the Director.... With the [current] Administrative Hearing Commission review procedures ..., the circuit court was simply without jurisdiction to grant the [plaintiff] any further relief. The relief [plaintiff] sought from the circuit court was to have an assessment cancelled. That relief must be obtained before the Administrative Hearing Commission."

The Director cites *Darnold*, 604 S.W.2d 826, as "dispositive" of the jurisdictional issue. In *Darnold*, a taxpayer resisted a 1979 sales tax assessment, contending that the law did not authorize sales tax on advertisement supplements, hence the rule that directed collection of such tax was invalid. *After* the assessment was entered, the taxpayer filed a petition for declaratory judgment in a circuit court, seeking an adjudication that the rule in question was void, and an order enjoining enforcement.

The day after instituting such suit, the taxpayer filed a complaint with the Administrative Hearing Commission seeking, among other relief, a declaration that the rule in question was void.[11] The Director immediately moved the circuit court to dismiss the declaratory judgment suit, asserting that the complaint to the Commission was actually a petition for review of the tax assessment, thus lodging exclusive jurisdiction in the Commission per § 144.261, RSMo 1978. The circuit court determined that S.B. 661, Laws 1978, allowed access to either a court or the Commission for determination of the validity of a legislative rule promulgated by an administrative agency,[12] and that both the circuit court action and the Commission proceeding presented only the question of the rule's validity. The circuit court thus concluded it was vested with subject matter jurisdiction, and restrained the Commission from going ahead with the proceeding there. The Director thereupon instituted an action in prohibition to bar the circuit court from entertaining the declaratory judgment suit. The appellate court concluded that the taxpayer's action before the Commission amounted to more than simply an effort to have the rule in question declared void. The taxpayer, reasoned the appellate court, was invoking the jurisdiction of the Commission to cancel the tax assessment, thereby seeking review of the Director's order applying the questioned rule to a specific set of facts. Consequently, said the appellate court, the proceeding in the Commission was for review of a *decision* of the Director, jurisdiction of which lay exclusively in the Commission under §§ 144.261 and 161.273, RSMo 1978. The opinion pointed out that the taxpayer remained free to dismiss the proceeding before the Commission and seek an adjudication of the validity of the questioned rule in the circuit court. In that event, however, the tax assessment on review before the Commission would become final, and any declaration by the circuit court that the rule was invalid could have effect only as a matter of future application. The opinion explained:

"... § 536.050.1 ... limits the jurisdiction of the circuit court to a declaratory judgment and injunction 'respecting the validity of rules, or of *threatened applications* thereof' by the agency.... A rule already applied to a set of facts [as in this case] has become a decision. The application is no longer *threatened*, but has become *actual.* Thus, under the ... statute, a person in interest who disputes the validity of a rule the agency threatens to use as the basis for an assessment or other decision, has recourse not only to the declaratory power of a circuit court but also to enjoin the agency from application of the rule while the adjudication of validity pends. At rendition of assessment by the agency, however, the threat of the rule reifies into actual application and *decision*—a subject matter within the exclusive review jurisdiction of the [Commission] and beyond the power of a circuit court under § 536.050.1." *Id.* at 832.

We fail to see how *Darnold* supports the Director's contention that the circuit court in the instant case was without jurisdiction to enter the two 1987 orders. Unlike the taxpayer in *Darnold,* plaintiff in the instant case obtained a declaratory judgment from the circuit court in 1977, 10 years *before* the Director's 1987 assessments. The 1977 judgment, as we have seen, declared that under the applicable statute, § 144.030.3(1), RSMo 1969 (now § 144.030.2(2), RSMo 1986), the reagents purchased by plaintiff and used in its mining, smelting and refining processes were exempt from sales tax. The 1977 judgment further held that the regulation under which the Director purported to assess sales tax was invalid. That judgment had been in place 10 years at the time the

---

11. Section 536.050.2, RSMo 1978, another component of S.B. 661, Laws 1978, purported to empower the Administrative Hearing Commission to render declaratory judgments regarding the validity of any rule or regulation of a state agency. That provision was declared unconstitutional by the Supreme Court of Missouri in *State Tax Commission v. Administrative Hearing Commission,* 641 S.W.2d 69, 76[16] (Mo. banc 1982).

12. Footnote 11, *supra.*

Director made the 1987 assessments. There was no need for plaintiff to obtain a new determination of the issues resolved by the 1977 judgment because, as we have pointed out, neither the applicable law nor the controlling facts had changed in any respect in the intervening 10 years.

■ The Director, as we understand him, does not question the validity of the doctrine of collateral estoppel in instances where the conditions for its application exist. The Director simply argues that the forum to decide whether collateral estoppel applies is the Administrative Hearing Commission, not the court that entered the judgment. We find nothing in the statutes or cases cited by the Director supporting that hypothesis. Section 527.080, RSMo 1969 (the predecessor of § 527.080, RSMo 1986 [13]), was in effect at the time of the 1977 judgment, and antedated S.B. 661, Laws 1978. Section 527.080 reads today exactly as it did in 1969. Nothing in S.B. 661, Laws 1978, purports to curtail the authority conferred on a circuit court by § 527.080 to grant further relief based on a declaratory judgment. Indeed, another provision of S.B. 661, to wit: § 536.050.1, Laws 1978, p. 459, states, in pertinent part:

> "Nothing herein contained shall be construed as a limitation on the declaratory *or other relief* which the courts might grant in the absence of this section." (Emphasis added.)

Additionally, the attempt in S.B. 661 to authorize the Administrative Hearing Commission to render declaratory judgments as to the validity of rules and regulations of state agencies was nullified by the Supreme Court of Missouri in 1982.[14]

We hold that the circuit court had jurisdiction under § 527.080, RSMo 1986, to enter the two 1987 orders in the instant case. The Director's first assignment of error is denied.

The Director's second point complains that the circuit court erred in assessing costs and attorney fees against him. While plaintiff's petition regarding its West Fork operation prayed for attorney fees, we espy nothing in either of the circuit court's orders assessing attorney fees against the Director or the Department. Each order did, however, assess costs against the Director and the Department.

■ Absent statutory provision, court costs cannot be recovered in state courts from the State of Missouri or its agencies or officials. *State ex rel. School District of the City of Independence v. Jones,* 653 S.W.2d 178, 191[15] (Mo. banc 1983). As no such statutory provision is cited, we hold the circuit court erred in assessing costs against the Director.[15]

Those portions of the circuit court's orders of August 5, 1987, taxing costs against the Director are reversed. In all other respects, both orders are affirmed.

GREENE, P.J., and HOLSTEIN, J., concur.

---

13. Footnote 1, *supra.*

14. Footnote 11, *supra.*

15. Section 136.315, RSMo 1986, authorizes an award of attorney fees and court costs in certain circumstances in sales or use tax proceedings. A party seeking such an award must provide evidence of eligibility therefor. Plaintiff made no effort in the circuit court to demonstrate eligibility.