# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1331
_____

Michelle K. Ideker

*Plaintiff - Appellant*

v.

PPG Industries, Inc.; PPG Industries Ohio, Inc.; Rohm & Haas

*Defendant*s

Harley-Davidson, Inc.; Harley-Davidson Motor Company Operations, Inc.

*Defendants - Appellees*

Midwest Medical Specialists, PC; Dr. Avon Coffman; Kansas City Cancer Center
LLC; Dr. Sukumar Ethirajan

*Defendant*s
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: February 12, 2015
Filed: June 11, 2015
_____

Before RILEY, Chief Judge, LOKEN and SMITH, Circuit Judges.
_____

RILEY, Chief Judge.

In this diversity case, see 28 U.S.C. § 1332(a)(1), Michelle Ideker appeals the non-prejudicial dismissal of her work-related personal injury claim against her former employer, Harley-Davidson Motor Company Operations, Inc., and Harley-Davidson, Inc. (collectively, Harley-Davidson), on collateral estoppel grounds. The district court[1] determined its prior dismissal of a nearly identical claim in a separate 2011 case, see Idekr[2] v. PPG Indus., Inc., No. 10-0449-CV-W-ODS, 2011 WL 144922, at *3 (W.D. Mo. Jan. 18, 2011), precluded Ideker's relitigation of the issue in this case. With appellate jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

On April 30, 2010, Ideker sued Harley-Davidson Motor Company Group, Inc. (HD Group) and others in federal district court, alleging she developed non-Hodgkins lymphoma from exposure to benzene while working in HD Group's paint department. On January 18, 2011, the district court dismissed Ideker's complaint against HD Group for failing to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). Deciding a matter of first impression in Missouri, the district court predicted the Missouri Supreme Court would require Ideker to raise her occupational disease claim against HD Group before Missouri's labor and industrial relations commission (commission) because her claim was "covered by Missouri's Workers' Compensation Law." On April 8, 2011, Ideker filed a workers' compensation claim with the commission, which is still pending.

Ideker's tort claims against the remaining defendants stayed before the district court until August 17, 2011, when the district court granted Ideker's voluntary

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

[2]Like the district court, we spell Ideker's name as she did in the complaint for this case, not as she did in her 2010 complaint.

stipulation of dismissal without prejudice. Ideker concedes the district court's dismissal of HD Group became final and appealable at that time.

Less than thirty days later, see Fed. R. App. P. 4(a)(1)(A), on September 13, 2011, the Western District of the Missouri Court of Appeals, over two separate dissents, issued an opinion that cast some doubt on the district court's state-law prediction. See State ex rel. KCP & L Greater Mo. Operations Co. v. Cook, 353 S.W.3d 14, 29-30 (Mo. Ct. App. 2011); accord Amesquita v. Gilster-Mary Lee Corp., 408 S.W.3d 293, 301 (Mo. Ct. App. 2013) (Eastern District) (agreeing with majority in KCP & L). In KCP & L, the Missouri Court of Appeals—examining Missouri's workers' compensation law as amended in 2005—determined Missouri's exclusivity provisions, Mo. Rev. Stat. § 287.120, did not bar common-law tort claims alleging occupational disease. KCP & L, 353 S.W.3d at 29-30.

Although Ideker's counsel was also counsel in KCP & L and frankly admits he was aware of the decision before Ideker's time to appeal expired, counsel explains Ideker did not appeal because "[a]t the time, there was little incentive for Ideker to seek appellate review requiring a second federal court to predict how Missouri courts would rule."

On August 27, 2012, Ideker filed a new complaint in Missouri state court, reasserting her occupational disease claim against Harley-Davidson. Harley-Davidson answered, asserting res judicata and collateral estoppel as affirmative defenses. After Ideker dismissed the non-diverse defendants, Harley-Davidson removed the case to federal court. See 28 U.S.C. §§ 1441(b)(1), 1446(b)(3).

On June 4, 2013, Harley-Davidson moved for summary judgment based on collateral estoppel. The district court initially denied the motion, deciding its "prediction as to how the Missouri Supreme Court would rule on this novel issue has proved to be incorrect" and that collateral estoppel did not apply because the Missouri

appellate decisions constituted an "intervening change in the law." But upon reconsideration under Federal Rule of Civil Procedure 60(b), the district court reversed course and dismissed Ideker's claims without prejudice on collateral estoppel grounds.

The district court still thought its prediction was wrong,[3] but concluded its prior decision was binding on Ideker because Missouri law precluded Ideker "from relitigating issues finally decided in [an] incorrect order[]." See Reynolds v. Tinsley, 612 S.W.2d 828, 830 (Mo. Ct. App. 1981) (indicating collateral estoppel could apply to an incorrect legal decision). The district court designated its non-prejudicial dismissal of Ideker's claim as a final judgment immediately appealable under Federal Rule of Civil Procedure 54(b). Ideker appealed January 29, 2014.

## II.    DISCUSSION
### A.    Applicable Law and Standard of Review

In a diversity case like this, we apply state substantive law in deciding whether to apply collateral estoppel or issue preclusion, see Austin v. Super Valu Stores, Inc., 31 F.3d 615, 617 (8th Cir. 1994), "giving a . . . judgment preclusive effect if a court in that state would do so," In re Scarborough, 171 F.3d 638, 641 (8th Cir. 1999). "'This rule applies even when the original judgment is that of another federal court sitting in diversity.'" Liberty Mut. Ins. Co. v. FAG Bearings Corp., 335 F.3d 752, 758 (8th Cir. 2003) (internal marks omitted) (quoting Follette v. Wal-Mart Stores, Inc., 41 F.3d 1234, 1237 (8th Cir. 1994), aff'd on reh'g, 47 F.3d 311, 313 (8th Cir. 1995)).

_____

[3]Effective January 1, 2014, the Missouri legislature amended Mo. Rev. Stat. § 287.120 to state expressly that occupational disease claims like Ideker's are exclusively covered by Missouri workers' compensation law. Responding to an argument Harley-Davidson made in a footnote, the district court determined that amendment did not definitively establish Missouri workers' compensation law exclusively covered Ideker's occupational disease claim under the prior version of the law. That issue is not before us.

-4-

We review de novo the district court's determination that collateral estoppel applies under Missouri law. See Boudreau v. Wal-Mart Stores, Inc., 249 F.3d 715, 719 (8th Cir. 2001).

### B.    Collateral Estoppel

"Collateral estoppel, or issue preclusion, bars relitigation of an issue already decided in a different cause of action." Derleth v. Derleth, 432 S.W.3d 771, 774 (Mo. Ct. App. 2014); accord Brown v. Carnahan, 370 S.W.3d 637, 658 (Mo. 2012) (en banc). Properly applied, the doctrine "promote[s] judicial economy and finality in litigation," Liberty Mut., 335 F.3d at 758, spares parties "the expense and vexation attending multiple lawsuits, . . . and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions," Montana v. United States, 440 U.S. 147, 153-54 (1979). Accord Buckley v. Buckley, 889 S.W.2d 175, 179 (Mo. Ct. App. 1994).

Under Missouri law, the district court's determination that the commission had exclusive statutory authority to hear Ideker's occupational disease claim was a final decision that can be given preclusive effect. See Sexton v. Jenkins & Assocs., Inc., 152 S.W.3d 270, 273-74 (Mo. 2004) (en banc) (precluding a second civil action for damages against an employer for work-related injuries because the dismissal of the first action "for want of subject matter jurisdiction was 'without prejudice' . . . only as to [the plaintiff employee's] right to proceed in the proper forum"—before the commission). In determining whether collateral estoppel applies to Ideker's claim, we must consider four factors:

> "(1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom

collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit."

Royal Ins. Co. of Am. v. Kirksville Coll. of Osteopathic Med., Inc., 304 F.3d 804, 807 (8th Cir. 2002) (quoting James v. Paul, 49 S.W.3d 678, 682 (Mo. 2001) (en banc)).

Deciding all of these factors were met, the district court concluded collateral estoppel precluded Ideker from reasserting her occupational disease claim in the district court. Ideker does not earnestly challenge the district court's evaluation of these factors. Rather, Ideker argues the district court erred in (1) "failing to recognize that collateral estoppel should not be applied when there has been an intervening change in the law," and (2) "failing to take into account the inequity that results from applying collateral estoppel under the facts of this case." Neither claim is availing.

### 1.    Intervening Change of Law

Ideker argues collateral estoppel should not apply in her case because KCP & L and Amesquita changed the law between the district court's two dismissals. In support, Ideker relies on ASARCO, Inc. v. McNeill, 750 S.W.2d 122 (Mo. Ct. App. 1988), a tax case in which the appeals court observed "a judicial declaration intervening between . . . two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable." Id. at 129 (quotation omitted) (noting the distinct application of collateral estoppel to serial tax cases). Ideker also relies on Restatement (Second) of Judgments § 28(2) (1982), which excepts an issue from preclusion if "[t]he issue is one of law and . . . a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." See also Fielder v. Fielder, 671 S.W.2d 408, 411 (Mo. Ct. App. 1984) ("[T]he Restatement (Second) rule has the virtue of preventing multiple litigation of an issue of law where the claims are *closely related*, but does not lock the parties into an erroneous conclusion of law *for all time*." (emphasis added)).

The district court initially accepted Ideker's change-of-law argument but, upon reconsideration, decided KCP & L and Amesquita did not change the law but instead simply clarified what the law had been since the legislature enacted the 2005 amendments. Aptly distinguishing Ideker's cited authorities as involving "something other than an incorrect decision," such as "the same type of transaction . . . repeated on multiple occasions" or "a series of transactions occurring before and after a change in the law" like the annual tax assessments in ASARCO, the district court determined Ideker's reassertion of the same injury claim did not justify an exception. See ASARCO, 750 S.W.2d at 126-27. Though the district court still believed it had made a mistake in predicting state law, the district court recognized "Missouri courts have consistently stated that the correctness of a decision does not affect its conclusiveness." We detect no error in the district court's careful analysis.

Even if we assume, without deciding, the district court's state-law prediction was "incorrect," Ideker fails to show reversible error. Under Missouri law, "'[w]hether a prior judgment is legally correct is not at issue in applying the doctrine of collateral estoppel.'" In re Scarborough, 171 F.3d at 642 (quoting Buckley, 889 S.W.2d at 179); accord Gott v. Dir. of Revenue, 5 S.W.3d 155, 159 (Mo. 1999) (en banc) ("The finality of a [judicial] decision . . . does not depend on the correctness of that decision."). "[T]he fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case" does not alter the preclusive effect "of a final, unappealed judgment on the merits." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); accord Ginters v. Frazier, 614 F.3d 822, 826 (8th Cir. 2010) ("Even wrongly decided questions may be precluded from reconsideration under the doctrine.").

To decide otherwise would seed "'uncertainty and confusion'" and frustrate the purposes of collateral estoppel. Federated, 452 U.S. at 398-99 (quoting Reed v. Allen, 286 U.S. 191, 201 (1932)); accord Clark v. Clark, 984 F.2d 272, 273 (8th Cir. 1993)

("[I]ssue preclusion prevent[s] relitigation of wrong decisions just as much as right ones. Otherwise, the doctrines would have no effect and be useless."); Buckley, 889 S.W.2d at 179 (explaining the purposes of collateral estoppel "are not served by permitting relitigation based on changes (if it is a change) in legislative or decisional law"). Any purported "mistake" the district court made in predicting Missouri law does not enable Ideker to "circumvent the dismissal in the first case" by refiling the same injury claim based on the same historical facts in a second case. Sexton, 152 S.W.3d at 274.

### 2. Overarching Equity

We also reject Ideker's assertion that "[t]he District Court erred in solely addressing the issue of whether it **can** apply collateral estoppel, without considering whether it **should** apply collateral estoppel given considerations of equity and fairness." See James, 49 S.W.3d at 683 ("The doctrine of collateral estoppel will not be applied where to do so would be inequitable."). In Ideker's view, the district court initially recognized it was inequitable to apply collateral estoppel because the district court "incorrectly" predicted Missouri law but applied collateral estoppel anyway—unfairly depriving Ideker of a judicial forum for her claims. We disagree.

Assuming Missouri requires some overarching requirement of equity or fairness, we discern no fundamental unfairness in applying collateral estoppel to the facts of this case. Ideker cannot remedy her failure to appeal the district court's dismissal by filing a second suit based on the same claim. See Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 325 (1927) ("A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause.").

"An unappealed final judgment is conclusive of the matters adjudicated, and cannot be challenged in a separate proceeding." Freeman v. Leader Nat'l Ins. Co., 58 S.W.3d 590, 598 (Mo. Ct. App. 2001); see also In re Scarborough, 171 F.3d at 642

(deciding a plaintiff who did not appeal alleged legal mistakes in a prior action could not "'bring a subsequent action challenging a legal ruling in a prior action'" (quoting Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1521 (10th Cir. 1990))).  The district court correctly decided it was not inequitable to bar Ideker from relitigating the district court's decision that it lacked statutory authority to hear her claim.  See Sexton, 152 S.W.3d at 274 ("'Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties.'" (quoting Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 525 (1931))).

## III.  CONCLUSION

We affirm.

_____